167 So. 558

## NIXON v. ALBERT.

### 8 Div. 697.

Supreme Court of Alabama.

April 16, 1936.

Claud D. Scruggs, of Guntersville, for appellant.

J. A. Lusk & Son, of Guntersville, for appellee.

KNIGHT, Justice.

This is the second appearance of the case in this court. Albert v. Nixon, 229 Ala. 273, 156 So. 775. The case involves both rescission and specific performance, owing to the dual nature of the contract.

On former appeal we sustained the equity of the complainant's bill, and held that under its averments complainant was entitled to the specific relief prayed for. The correctness of our conclusion on the former appeal is not now questioned. However, the case was then before us on demurrer. It is now here on appeal from a final decree, denying both rescission and specific performance, but awarding complainant counsel fees in the prosecution of the suit, and taxing cost against the respondent, as administratrix of the estate of F. B. Albert, deceased.

The appeal is by the complainant, and there is no cross-appeal, or cross-assignment of error by the respondents, and hence the propriety of the decree awarding solicitor's fees to complainant is not before us for determination.

The salient facts averred in the bill are set out in our former opinion in the case. The bill was not amended on the return of the case to the lower court, and hence there

is no necessity to again set out the averments of the bill.

The cause was tried in the court below on an agreed statement of facts.

It appears from the evidence that F. B. Albert and wife for the consideration price of $1,105 conveyed to the complainant a certain tract of land in Marshall county. This conveyance was signed by the grantors on the 21st day of January, 1926, but was not delivered until the 2d day of April, 1926, and on which date the said F. B. Albert also executed and delivered to complainant, along with said deed, a contract in words and figures as follows:

"Guntersville, Ala. 4/2/1926.

"This agreement entered into between F. B. Albert party of the first part and Curtis Nixon party of the second part.

"Party of the second part has purchased from party of the first part Ninety (90) acres of land for $1,105.00 said land is now under mortgage by party of the first part and party of first part has made party of second part a warranty deed to said land.

"Party of the first part agrees to have record marked satisfied by April 1st, 1928 otherwise party of first part agrees to refund purchase price $1,105.00 with interest from date and pay for improvements put on said land by party of the second part, on April 1st, 1928, if said mortgage has not been satisfied and party of the second part agrees to furnish the party of the first part a warranty deed without any indebtedness against the said land made by the party of the second part.

"Said land being in section ten and eleven of Township nine and range two east, lying and being in Marshall County, Alabama.

"If party of the first part settles said mortgage and has mortgage record satisfied by April 1st, 1928 or before the above agreement shall be null and void, otherwise binding.

"F. B. Albert.

"Witness: J. P. Willis."

At the time of the delivery of this deed to the said Nixon, the land conveyed to him was encumbered by a mortgage to the First Joint Stock Land Bank of Montgomery.

Upon his purchase of the land, the said Nixon was placed in possession of the same, and from April 2, 1926, to the present time he has continued in the uninterrupted possession and enjoyment of the property, receiving the yearly income accruing therefrom. No one has ever molested him in the possession or enjoyment of the premises.

The said F. B. Albert died intestate in Marshall county on the 2d day of February, 1932, and the respondent Effie M. Albert is the administratrix of his estate. Up to the time of his death he had not paid and discharged the lien of the mortgage of the First Joint Stock Land Bank, but, on the contrary, said mortgage *at the time of the filing of the bill* in this cause was a valid, legal, and subsisting lien upon the lands so conveyed to Nixon, the complainant.

It further appears from the evidence that no demand was ever made upon the said F. B. Albert, during his lifetime, by the said Nixon for a rescission of the contract, or for a rescission and specific performance of the same.

The agreed statement of facts, paragraph 16, contains the following recital: "That Nixon on at least two occasions talked to F. B. Albert, one time during the fall of 1930 and once in 1931, and asked him to have said mortgage cancelled of record and he was assured by Albert each time he would do so at once. That no such demand was ever made in writing."

It thus appears that these requests were not made for the cancellation of said mortgage until about two years after the time allowed Albert by the contract to pay the mortgage debt, and to secure the cancellation of the mortgage upon the records, and during all of which time Nixon was in the undisturbed possession of the property and its enjoyment. And we judicially know that this period covered a time when the country was at its peak of prosperity, and that the depression, with its withering and devastating effect, did not set in until about the time Nixon requested Albert to have the mortgage canceled of record. This request was not made until in the fall of 1930, more than two years after the time fixed by the contract had expired.

It would therefore seem that if time was ever of the essence of the contract, the complainant in his subsequent dealings with the said F. B. Albert waived this feature of the contract, which provided that the record of the mortgage of the First Joint Stock Land Bank should be "marked satisfied" by April 1, 1928.

It further appears from the agreed statement of facts that on July 18, 1934, the mortgage of F. B. Albert to the First Joint

Stock Land Bank of Montgomery, Ala., was paid in full, and the said mortgage canceled of record, and which occurred long prior to the entering of the final decree in this cause.

The court, on final hearing, was of the opinion that, inasmuch as the respondent, Effie M. Albert, as administratrix of the estate of F. B. Albert, had removed the lien of the mortgage held by the said First Joint Stock Land Bank, and had caused the same to be canceled of record prior to the submission for final decree, the complainant was not entitled to the decree of rescission and specific performance prayed for, but was entitled to recover cost and a reasonable allowance to cover the fee of his solicitor, and decreed accordingly.

■ Whether the agreement on the part of Albert, the grantor, to have the mortgage given by him and his wife to the First Joint Stock Land Bank of Montgomery, Ala., canceled of record by *April 1, 1928*, made time as of the essence of the contract we need not determine, for it was competent for the parties to waive this provision. Such waiver may result from the conduct of the parties indicating an intention to regard the contract as still in force after default. 13 Corpus Juris, p. 689, § 784; Acker v. Bender, 33 Ala. 230; Davis v. Robert, 89 Ala. 402, 8 So. 114, 18 Am. St.Rep. 126; Zirkle et al. v. Ball et al., 171 Ala. 568, 54 So. 1000; Lowy v. Rosengrant, 196 Ala. 337, 71 So. 439.

■ Under the evidence in this case the court was justified in holding that, if time was ever of the essence of the contract, the complainant waived his right to insist thereon, for it abundantly appears that two years after the time had expired for the cancellation of the mortgage, the complainant treated the contract as still in force.

So, then, the question to be determined in this case is: Did the satisfaction of the mortgage held by the First Joint Stock Land Bank, and its cancellation, prior to the entering of the final decree in the case, but after the filing of the bill, serve to defeat the complainant's suit for rescission and specific performance?

· We quote the following from 66 Corpus Juris, § 653, p. 952: "In equity, however, a different rule prevails. Unless time is of the essence of the contract, or in the absense of circumstances which would make it inequitable, or which would put the vendor in any position different from that in which he would have been in if the closing had been on a later day, rather than on the law day, a delay in making a good title does not generally impair the rights of the vendor, *especially where the purchaser is in possession;* but it is sufficient if the vendor makes a good title even after suit seeking a *rescission of the contract is brought, or even before trial, or before judgment, or decree is rendered against him."* (Italics supplied.)

The foregoing rule seems to be supported by the great weight of authority. See notes under above text.

In North Carolina, at an extremely early date, it was held in the case of Westall v. Austin, 40 N.C. (5 Ired.Eq.) 1: "It is very certain a Court of Equity will not compel a purchaser to take a title substantially defective, but it is the privilege of the vendor to complete his title; and this he may do at any time before a decree."

In Meeks v. Garner, 93 Ala. 17, 20, 8 So. 378, 379, 11 L.R.A. 196, it was observed: "Upon a bill filed by a vendee for the rescission of an executed or executory agreement for the sale of land, because of a defect in the title, no fraud having been practiced by the vendor, it will be a sufficient answer if the vendor can show that he had a valid and legal title at the time it was agreed the title should be made, *or at the hearing of the cause,* although his title may have been defective at the date of the agreement; but if the agreement was effected by the fraudulent misrepresentations of the vendor in a material matter touching the validity of his title, the vendee may elect to rescind or ratify the agreement, notwithstanding· the vendor may have subsequently acquired a good and valid title." . (Italics supplied.)

In the case of Coleman v. First National Bank of Decatur, 115 Ala. 307, 22 So. 84, 85, it was held: "Although there may have been a defect in the title at the time of the agreement of sale, if no fraud was practiced by the vendor, it will be a sufficient answer to a bill by the vendee to rescind on account of defects in the title at that time, that he had a valid legal title at the time the title should be made, or at the hearing of the cause. Meeks v. Garner, supra; Fry, Spec. Per. p. 441."

■ Confessedly nearly a year before the decree was made and entered in this cause, the administratrix, out of the funds of the estate of her intestate, paid off and fully discharged the said mortgage to the First Joint Stock Land Bank, and caused the entry

of payment and satisfaction to be noted on the margin of the record thereof in the office of the judge of probate of Marshall county, Ala. It further appears that no demand of any kind was ever made upon the said Nixon to pay any part of said mortgage indebtedness; that he was put to no expense in defending his possession or enjoyment of the premises against the claims of any person; that during the entire time he was unmolested in his possession; that he, during the peak of land values, made no effort to rescind the agreement, or to have the contract specifically performed; and that it was not until after the death of said Albert, when depression, resulting in lower prices of property, had set in, that he sought to reconvey the property and demand a return of the purchase price, upon the ground that the vendor had failed to remove the lien of the mortgage of the First Joint Stock Land Bank. Recognizing the right of complainant to have said mortgage paid and the lien discharged, the respondent, as administratrix of the estate of F. B. Albert, deceased, paid the mortgage indebtedness, and caused the record of the mortgage to show this fact. Thus, complainant has received what he bargained for, and is not entitled to the specific relief prayed, viz., rescission and specific performance.

The decree of the court below secured to the complainant all that he was entitled to under the evidence. It follows that the decree of the circuit court is due to be affirmed, and it is accordingly so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.