GARDNER ET. AL. *v.* MANN ET AL.

[No. 5,512.    Filed December 12, 1905.]

1. CANCELATION OF INSTRUMENTS.—*Fraud.*—*Misrepresentations.* —Where a party to a contract misrepresents a material existing fact, and the other party, without the means of knowledge at hand, acts and relies thereon to his injury, a court of equity will cancel such contract, if such parties can be placed *in statu quo.* p. 698.

2. CANCELATION OF INSTRUMENTS.—*Misrepresentations.*—Where a defendant, in order to induce plaintiffs to exchange their home for his lands in Kansas, represented that such lands were "raw prairie land," "four miles from Garden City," that they "could all be plowed," and plaintiffs, without any other means of knowledge, acting upon such representations, exchanged their home for such lands, and such lands were worthless sand wastes, incapable of cultivation and eleven miles from Garden City, such conveyance will be canceled and plaintiff's property be restored, the deed to such Kansas lands having been tendered to defendant.   p. 698.

3. WORDS AND PHRASES.—*"Prairie."*—Raw "prairie" land imports treeless land covered with coarse grass and containing a fertile soil.   p. 699.

4. CANCELATION OF INSTRUMENTS. — *Injury.* — Where plaintiffs show that defendant represented certain lands to be raw prairie land, capable of cultivation, and four miles from the county seat, and the proof, in a suit for cancelation of the conveyance taken on the faith of such representations, shows that such lands were sandy wastes, incapable of cultivation and eleven miles from the county seat, injury to plaintiffs is sufficiently shown.   p. 700.

5. SAME.—*Injury.—Misrepresenting Location but Not Value of Lands.*—It is no defense in a suit for the cancelation of a conveyance induced by misrepresentations to show that the lands actually conveyed are of the same value as the lands pretended to be conveyed.   p. 701.

From Fountain Circuit Court; *Joseph M. Rabb,* Judge.

Suit by Ephraim L. Mann and another against Frederick B. Gardner and another.   From a decree for plaintiffs, defendants appeal.   *Affirmed.*

*Whittington & Whittington,* for appellants.

*W. A. Swank* and *Thomas & Foley,* for appellees.

MYERS, J.—The purpose of this action is to rescind, cancel and set aside an executed contract for the exchange of lands, on account of misrepresentations alleged to have been made by appellant Frederick B. Gardner to appellees. Demurrers to the complaint were overruled, and appellants answered in general denial.   The issue thus formed was submitted to the court, trial had, special findings, and conclusions of law thereon stated.   The separate motion of

Gardner for a *venire de novo* was overruled, and judgment was rendered on the findings in favor of appellees.

Appellants contend that the court erred in its conclusions of law on the special findings. In substance the findings are as follows: On and prior to May 17, 1902, appellees were the owners by entirety of certain real estate in the city of Crawfordsville, Indiana, of the value of $1,500, and of the annual rental value of $200, with a mortgage thereon for $700. On the same day and prior thereto appellant Frederick B. Gardner was the owner of 160 acres of land in Finney county, Kansas, which was unimproved and not susceptible of cultivation, and of the value of $200, and of the annual rental value of $5, and which was unencumbered. Said parties were not acquainted with each other prior to said day, and were brought together by Alfred Lookabill, the agent of appellees, who introduced the subject of the exchange of their said properties. Appellees inquired of Gardner as to the location, character of soil, and price at which he held the Kansas land, to which Gardner replied that the Kansas land was all raw prairie land; that the same could all be plowed; that it was within four miles of Garden City, the county seat of Finney county, Kansas, and situate in that county; that a railroad ran through Garden City; and that he held the land at $10 per acre. Lookabill volunteered the statement that he had never seen the land and knew nothing about it, but he had relatives living in Kansas who he thought did their trading at Garden City, and from whom he had received letters stating that land in their vicinity was selling from $5 to $10 per acre. Appellees stated to appellant Frederick B. Gardner that if the lands were rich, black prairie soil, and would produce wheat, corn and oats, it was all right; otherwise it was not. Thereupon said Gardner informed appellees that the land was just as he said it was. Appellees priced the Crawfordsville property at $1,800, and appellant his land at $10 per acre. Appel-

lant said that he would exchange his Kansas lands for appellees' Crawfordsville property and assume the mortgage thereon, and if the trade was made it must be done that evening (Saturday), as he expected to leave the next Monday morning. Thereupon deeds were exchanged, appellees receiving a deed for the Kansas land, and appellant Frederick B. Gardner a deed for appellees' Crawfordsville property. It is also found that neither of the parties had any knowledge or had ever seen the Kansas land. At the time of said agreement to exchange property, Lookabill had no special employment or contract with said appellant, but his services in making the trade were thereafter recognized by Gardner, who paid him for the same. In making the exchange of property aforesaid appellees relied upon the statement of Lookabill as their agent, and paid him a commission as such, not knowing that he was acting in anywise for said appellant. They relied upon and believed the statements made by said Gardner with reference to the character and quality of the land and its location with reference to Garden City, that it was susceptible of cultivation, and that it was worth in the neighborhood of $10 per acre. It is also found that appellees had no means at hand of ascertaining the truth or falsity of any of said statements. "Sixth. The court further finds that, as a matter of fact, the land in question was not located within four miles of Garden City, the county seat of Finney county, Kansas, but that it was located eleven miles from Garden City, Kansas, and that, while the land could be plowed, it was a barren, sandy waste, in an arid region not susceptible of irrigation, and not susceptible of cultivation in any kind of crops, and was worth not more than $1.25 per acre. Seventh. The court further finds that said agent, Lookabill, had no relatives living nearer than thirty miles of Garden City, and that they resided in another county, and not in Finney county." The findings further show that on June 5, 1902, appellees offered to place appellants *in statu*

*quo,* and demanded of them a reconveyance of the Craw-fordsville property, which was refused.

On substantially these facts the court stated conclusions of law as follows: "(1) That plaintiffs are entitled to have the deed executed by the plaintiffs to the defendant Frederick B. Gardner, mentioned in its findings, set aside and declared void; (2) that the plaintiffs are entitled to have their title in and to the premises described in the complaint quieted against the claim of the defendants thereto."

The doctrine is well settled that where a party to a contract makes a misrepresentation as to a material existing fact, and, without means at hand of knowledge, "the 1. one to whom it is made believes it to be true, relies and acts upon it" to his prejudice, he may, in a court of equity, rescind it, if the parties can be placed *in statu quo,* whether the falsity of the representation was known to the party making it or not. *Guy* v. *Blue* (1897), 146 Ind. 629; *Small* v. *Kennedy* (1894), 137 Ind. 299, 19 L. R. A. 337; *Ross* v. *Hobson* (1892), 131 Ind. 166; *Bethell* v. *Bethell* (1883), 92 Ind. 318; *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280; *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Hartman* v. *International Bldg., etc., Assn.* (1901), 28 Ind. App. 65; *Equitable Trust Co.* v. *Milligan* (1903), 31 Ind. App. 20; *Slaughter* v. *Gerson* (1871), 13 Wall. (U. S.) 379, 20 L. Ed. 627; *Knappen* v. *Freeman* (1891), 47 Minn. 491, 495, 50 N. W. 533.

In our judgment the findings of the trial court clearly bring the case at bar within the principle above announced. Appellant Frederick B. Gardner, for the purpose 2. of inducing appellees to exchange their Crawfords-ville property for his Kansas lands, represented the Kansas land as all "raw prairie land;" that it was susceptible of cultivation; that it was within four miles of Garden City—all material facts, and all of which statements the court found to be false.

Prairie is defined to be "a level or rolling tract of treeless land covered with coarse grass, and generally of rich soil; especially as in parts of the western United States; also, any natural grass land, as the so-called natural meadows." Standard Dict. "A meadow; level grassy land." Century Dict. "An extensive tract of level or rolling land, destitute of trees, covered with coarse grass, and usually characterized by a deep, fertile soil." Webster's International Dict. Therefore the words "raw prairie land" taken together could have meant nothing less, under the circumstances, than a tract of treeless land covered with coarse grass, and a fertile soil in its natural or uncultivated state. This was evidently the understanding of appellees, as must have been apparent to appellant Frederick B. Gardner from their statement to him: "That if the land was rich, black prairie soil, and would produce wheat, corn and oats, it was all right; otherwise it was not," and his affirmation that "the land was just as he said it was," virtually amounted to affirming that the land was rich, black prairie soil, and would produce wheat, corn and oats, and under the findings was certainly misleading, deceptive and wide of the truth. The court further finds that appellees relied on the representations of Gardner, and had no means at hand of ascertaining the contrary. The land was in the state of Kansas, and appellees at the time the trade was made were in Crawfordsville, Indiana, and knew nothing about the Kansas land, except the information received from appellant, and the knowledge conveyed to them by their agent, who volunteered a statement which, although qualified, had not a single fact to support it. This statement played its part in the transaction, as was well recognized by Gardner. For, when taken in connection with the misstatements of Gardner, it tended to corroborate those made by him, and further to impress appellees with the truth of the representations in fact false.

In *Ross* v. *Hobson, supra,* a rescission of an executed contract was sought on the ground of false representations as to the value of stock in a certain corporation, constituting the consideration for the transfer of certain real estate. In the course of the opinion the court said: "We are inclined to the opinion that the appellees might rely on the representations made, and that the falsity thereof, as alleged, entitled them to a rescission of the contract."

In *Rohrof* v. *Shulte* (1900), 154 Ind. 183, the court uses language expressive of our views of the case at bar, if it may be said that the findings include some matters of an evidentiary character. The court said: "It is true that the trial court has embraced in its special findings some matters of an evidentiary character, still the legitimate facts, as therein set forth, are sufficient to expose that the conveyance of appellee's land which he, by his action, invokes the court by its decree to set aside and annul, was procured through the fraudulent scheme projected by the defendant Brillo. * * * The facts reveal such a clear case of fraud, upon the part of the defendant Brillo, and that the conveyance, upon the part of appellee, was procured thereby, that surely there can be no contrariety of opinion in respect to these features of the case."

As to the question of injury, we think the findings sufficient. The special findings show that appellees believed the Kansas land to be worth in the neighborhood of $10 per acre, when in fact it was worth only $1.25 per acre; but, aside from the per-acre price, the land is a barren, sandy waste, in an arid region not susceptible of irrigation, and not susceptible of cultivation in any kind of crops. Taking these facts in connection with the representations made as to the character, quality and location of the land, and the value of the property exchanged for it, is sufficient to show prejudice to appellees; and the rule requiring the finding of ultimate facts necessary to support conclusions of law in this particular is satisfied.

5. Appellees exchanged their property for "raw prairie land" within four miles of Garden City, Kansas, and not for a barren waste in an arid region eleven miles away. It is not for appellants to say that appellees sustained no injury because the land eleven miles away from Garden City was as valuable as it would have been had it been within the represented distance. For the land received was not the land designated in appellants' representations. The law, upon every principle of justice and reason, ought and does give appellees the benefit of their contract, and will not compel them to accept something not contemplated by their agreement induced by misrepresentations, simply because the two tracts of Kansas land might be of the same value, and because, pecuniarily, appellees would not be injured on account of the location of the land received by them. *Mitchell* v. *McDougall* (1872), 62 Ill. 498, 506. See, also, *Wolfe* v. *Pugh* (1881), 101 Ind. 293; *Culver* v. *Webb* (1838), 12 Conn. 441; *Murray* v. *Jennings* (1875), 42 Conn. 9, 13, 19 Am. Rep. 527.

The findings are sufficient to support the conclusions of law. See *Witherwax* v. *Riddle* (1887), 121 Ill. 140, 13 N. E. 545.

From what we have already said, our conclusion on the motion for a *venire de novo* must be that the trial court correctly ruled.

Judgment affirmed.