**INDIANA STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, St. Joseph Valley Building and Construction Trades Council, and Noble Hand, Appellants (Plaintiffs),**

v.

**WARSAW COMMUNITY SCHOOL CORPORATION, Silkworth Construction Company, Standard Electric Construction Company, Inc., and Redman Plumbing and Heating, Inc., Appellees (Defendants).**

No. 2–1284–A–356.

Court of Appeals of Indiana, Second District.

June 4, 1986.

Joseph V. Simeri, Melanie K. Morgan, Butler & Simeri, South Bend, for appellants.

Max E. Reed, Reed & Earhart, Warsaw, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiffs-appellants Noble Hand (Hand), the Indiana State Building and Construction Trades Council, and the St. Joseph Valley Building and Construction Trades Council [hereinafter collectively referred to as appellants] appeal the denial of a declaratory judgment to determine the validity of

a construction wage scale used by the Warsaw Community School Corporation (school corporation), the Silkworth Construction Company, the Standard Electric Construction Company, and Redman Plumbing and Heating [hereinafter collectively referred to as appellees]. Appellants claim that the wage scale adopted by the school corporation and approved by the trial court contravened the requirements of Ind.Code 5–16–7–1 (1982) for the adoption of a wage scale in public construction contracts.

We reverse.

## FACTS

In August of 1982, the school corporation was preparing to construct a new elementary school. This school building [hereinafter referred to as the Claypool project] was only one of several projects which the school corporation was planning or already in the process of building in Kosciusko County. On August 30, 1982, the architects of the Claypool project requested Governor to appoint, pursuant to IC 5–16–7–1, a committee to establish the wage scale for laborers employed in the construction.[1] On September 3, 1982, Dr. Larry Crabb (Crabb), Superintendent of the school corporation, was notified of the establishment of the prevailing wage committee (committee). Crabb was appointed to represent industry; Hand, of the State Federation of Labor, was appointed to represent labor; and Susan Ford (Ford), of the Indiana Division of Labor, was appointed to be the third member of the committee.

Crabb admitted receiving the letter which informed him of the date and place the committee was to meet. Neither Crabb nor any other representative of the school corporation attended the committee meeting on September 15, 1982. Hand and

1. The provisions of IC 5–16–7–1 are as follows: *"Any firm, individual, partnership or corporation which is hereafter awarded a contract by this state,* or by any political subdivision thereof, or by a municipal corporation, for the construction of any public work, and any subcontractor thereon, *shall be required to pay for each class of work on such project a scale of wages which shall in no case be less than the prevailing scale of wages being paid in the immediate locality* for such class of work as hereinafter to be determined. *For the purpose of ascertaining what the prevailing wage scales are in such immediate locality, the awarding governmental agency, prior to advertising for such contract, shall set up a committee* of three (3) persons; one (1) representing labor, to be named by the president of the state federation of labor; one (1) representing industry, to be named by the awarding agency, and a third member to be named by the governor. As soon as appointed said committee shall meet and shall fix and determine in writing as follows: A classification of the labor to be employed in the performance of the contract for such project, into three (3) classes: skilled, semiskilled and unskilled labor, and the wage per hour to be paid each of such classes: Provided, That the rate of wages so to be fixed and determined shall not exceed the prevailing wage scales being at the time paid in such locality for such class of work: Provided further, That the provisions of this chapter shall not apply to contracts let by the department of highways for the construction of highways, streets and bridges. The provisions of IC 8–13–5–8 do apply on state highway projects. Such determination shall be made and filed with such awarding agency at least two (2) weeks prior to the date fixed for such letting, and a copy thereof shall be furnished upon request to any person desiring to bid on such contract. Said schedule shall be open to the inspection of the public. If such committee fails to act and to file such determination at or before the time hereinbefore provided, the awarding agency shall make such determination, and its finding shall be final. It shall be a condition of such contract that the successful bidder and all of his subcontractors shall comply strictly with such determination made as above provided. None of the provisions of this section, however, shall be interpreted as permitting the payment of wages for skilled, semiskilled or unskilled labor on any such public project in this state the letting of which is subject to the provisions hereof which are less than the minimum provided for in the applicable national code of fair competition, or regional agreement approved by the president of the United States if there be any such: Provided further, That the provisions of this chapter shall not apply to any such public projects in this state the letting of which would otherwise be subject to the provisions hereof, and which are to be paid for in whole or in part with funds granted by the federal government, unless the department of the federal government making such grant shall consent in writing that the provisions of this chapter shall be applicable to such project."
(emphasis supplied).

Ford, however, met as scheduled and voted to adopt the wage scale prepared by Hand. At trial, Hand testified that the committee's wage scale was based on a review he conducted of other construction contracts in the locality, on conversations with people working on construction projects, and on wage rates reported in the Federal Register. Hand admitted that the wage scale he recommended did not consider non-union wages in the locality.

The school corporation adopted a different wage scale for use by contractors in the submission of bids for the Claypool project. The wage scale adopted by the school corporation was developed by surveying local contractors and then averaging the reported wage rates. Similarly, a wage scale was unilaterally adopted by the school corporation on an earlier project to construct an addition to the Warsaw Community High School. The validity of the Warsaw Community High School wage scale, however, is not at issue in this appeal.

The trial court held a hearing on the appellants' motion for a preliminary injunction to halt construction on the Claypool project on June 9, 1983, and denied the motion on September 23, 1983. The trial court heard additional evidence on the appellants' action for a declaratory judgment on July 11, 1984. On September 10, 1984, the trial court entered judgment against the appellants. The trial court also entered the following findings of fact.

"1. Defendant Warsaw Community School Corporation, hereinafter called the 'School Corporation', in 1982, undertook to build a Freshman High School building and the remodeling of an elementary school at Claypool, Indiana.

2. That at such time the 'School Corporation' was completing remodeling of the Senior High School building in Warsaw and had completed another elementary remodeling project in Warsaw just prior to 1982, hereinafter called the Madison Project and the Senior High School Project.

3. That such 'School Corporation' unilaterally established its own wage scale after September 15, 1982 and proceeded with its projects using such wage scale.

4. That a Committee was named pursuant to IC 5–16–[7–1], which met in Elkhart, Indiana on September 15, 1982 and adopted a wage scale.

5. That such wage Committee meeting was held at Carpenter's Union Hall, Elkhart, Indiana, as all such meetings had been for one and one half years.

6. That the 'School Corporation' had notice of such September 15, 1982 meeting, but did not attend or participate.

7. That the Labor representative was one, Noble W. Hand, representing the State AFL–CIO and that one, Sue Stone, represented the State of Indiana.

8. That Sue Stone only knew of wages taken from union contracts in that area because she was told what the rates were by Noble Hand and she had seen union contracts.

9. That Sue Stone made no inquiry at any time as to the prevailing wage scale in Kosciusko County and has never made an independent investigation.

10. That said Noble Hand and Sue Stone had participated as members of other wage committees something less than 50 times in the Kosciusko County area.

11. That Sue Stone and Noble Hand had participated in at least two other wage committee meetings to set wage scales in Kosciusko County, Indiana for defendant School Board.

12. That the wage scale was prepared in advance by the labor representative and presented in final form at the beginning of the meeting on September 15, 1982.

13. That on all occasions including meetings for the 'School Corporation', on wage committees, Noble Hand brought the schedule of prevailing wages to the meeting already completed except for signatures.

14. That Warsaw Community Schools had presented evidence as to prevailing

wage scale on at least one other occasion, and that at a meeting on September 16, 1981, had such information available but that the State Representative on the Committee did not appear at the time set for the meeting.

15. That the School Corporation had unilaterally adopted a wage scale on at least two other occasions.

16. That Noble Hand had prepared a scale in advance at the wage scale meeting attended by Sue Stone and at Elkhart in September 1981 at which time a representative of the 'School Corporation' appeared with information regarding the prevailing wage scale in Kosciusko County which was signed by Sue Stone and Noble Hand.

17. That the 'School Corporation' representative made an investigation as to the prevailing wage scale prior to both the 'Madison Project' and 'Senion [sic] High School Project', both school board projects, and that such information was furnished to Sue Stone for the 'Madison Project'.

18. That the 'School Corporation' representative had no authority to sign a wage scale for the 'Madison Project'.

19. That Noble Hand the Labor representative had never changed a schedule as a result of a wage committee meeting in fourteen years.

20. That the Claypool Elementary Project was not completed at the time of the hearings in this cause.

21. That the Freshman High School Project was completed prior to this proceeding and is not being considered in this proceeding.

22. That Noble Hand's conclusions are all union scale wages; that he has never investigated non-union employers or employees and that he basis [sic] his determinations on wage scale without regard to non-union wages.

23. The Court further finds that the Plaintiff has failed to prove by a preponderance of the evidence the prevailing wage scale in the immediate locality.

24. That the wage scale adopted by the 'School Corporation' is at least as likely if not more likely to represent such scale." *Record* at 89–90.

Appellants appeal from the denial of their timely motion to correct error. On January 20, 1986, we requested that the parties submit affidavits to aid us in determining whether the present appeal was rendered moot by the completion of the Claypool project. This they have done.

## ISSUE

One of appellants' issues is dispositive: Whether the trial court erred as a matter of law when it found that the prevailing wage committee acted arbitrarily and capriciously in adopting its scale of prevailing wages in the locality?

## DECISION

PARTIES' CONTENTIONS—Appellants contend that the trial court erred when it refused to grant them declaratory relief. They argue that the uncontroverted facts at trial showed that the prevailing wage committee met and adopted a scale of prevailing wages according to the provisions of IC 5–16–7–1.

Appellees reply that the wage scale adopted by the committee was not binding because the committee arbitrarily and capriciously failed to consider certain evidence. They assert that the wage scale which the school corporation unilaterally adopted more accurately reflected the prevailing wages in the community.

CONCLUSION—The trial court erred as a matter of law when it determined that the prevailing wage committee arbitrarily and capriciously adopted a scale of prevailing wages in the locality.

As a preliminary matter, we conclude that this appeal from the denial of a declaratory judgment has not been rendered moot by the completion of the Claypool project. An issue is moot or no longer live "when the parties lack a legally cognizable interest in the outcome." *Bartholomew County Hosp. v. Ryan* (1982), Ind.

App., 440 N.E.2d 754, 757, *trans. denied.* (citations omitted). Further, we deem any issue to be moot when its determination results in no change in the status quo. *Id.*

█ Ind. Rules of Procedure, Trial Rule 57 provides: "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Thus, the availability of a claim for damages does not preclude an action for a declaratory judgment only. And, a declaratory judgment determining the parties' rights does not preclude a later action for damages. 10A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2771 (1983).

█ It is generally recognized that employees of public contractors may sue as third party beneficiaries for wages on a contract between the contractor and the public. *See* 65 AM.JUR.2D *Public Works and Contracts* § 214 (1972). The present appeal has not been rendered moot merely because appellants, as third party beneficiaries of the Claypool project construction contract, have not, as yet, sought monetary damages. A suit for damages is still possible. Thus, the dispute concerning the amount of wages is still in issue, and its resolution will certainly have an impact on the status quo, even though construction of the Claypool project appears to be complete.

The facts here are thus distinguishable from those of *Committee for Prevailing Wage Scale v. Zeller* (1965), 140 Ind.App. 478, 208 N.E.2d 697, *trans. denied,* wherein the Appellate Court held an appeal from the denial of a declaratory judgment to be moot after the completion of a public construction contract. The plaintiffs in *Zeller,* however, sued as members of a prevailing wage committee and therefore had no financial interest in the outcome of the litigation. The Appellate Court in *Zeller* held that the committee members no longer had an interest in the litigation when the purpose of the committee had been fulfilled, i.e., upon completion of the construction project. *Id.* As we observed above, however, the appellants here have a financial interest in the outcome of the case, an interest which continues regardless of the completion of construction at the Claypool project.

█ So we turn then to the substantive question presented here. The prevailing wage committee has been entrusted with determining the prevailing wages in the locality. "For the purpose of ascertaining what the prevailing wage scales are in such immediate locality, the awarding governmental agency ... shall set up a committee...." IC 5–16–7–1. In order for appellants to establish their right to declaratory relief, they are required to show that the committee was properly constituted, that the committee met as scheduled, and that it adopted a valid scale of prevailing wages in the immediate locality. The parties do not dispute that the committee was established and that it met pursuant to the provisions of IC 5–16–7–1. In response to the action for declaratory relief, however, appellees raised the defense that the committee arbitrarily and capriciously adopted its scale of wages.

█ Indiana has long recognized the general principle in administrative law that, with few exceptions, a party must exhaust available administrative remedies before seeking judicial relief. *See, e.g., Board of School Commr's v. Eakin* (1983), Ind., 444 N.E.2d 1197; *United States Auto Club, Inc. v. Woodward* (1984), Ind.App., 460 N.E.2d 1255, *trans. denied.* A derivative of this rule is that in proceedings to enforce an administrative decision, a defense may be waived by the conduct or omission of a party. 73A C.J.S. *Public Administrative Law and Procedure* § 278 (1983); *see, e.g., County of Sauk v. Trager* (1984), 118 Wis.2d 204, 346 N.W.2d 756 (court recognized exception to general rule that defense to enforcement of administrative decision is waived by failure to challenge action directly). The object of both rules is the same: such rules discourage interference by the courts in the agency's performance of its special function given it by the legislature, finality in decisionmaking is en-

couraged, an orderly judicial process is maintained, multiplicity of suits is avoided, and judicial time is economized. *See Trager, supra.*

■ A party may be excepted from the requirement of exhausting available administrative remedies when the administrative remedy is inadequate or would be futile. *See, e.g., Woodward, supra.* To prevail on an assertion of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id.* at 1259. Other exceptions have been recognized when the remedy involves a question which is beyond the expertise of the administrative agency, or when some equitable consideration precludes application of the rule. *See Trager, supra.*

■ None of the above exceptions is applicable here. The school corporation simply chose not to participate in the committee's statutorily prescribed factfinding duties. It would not serve the purpose of the rule relating to the exhaustion of remedies to allow the school corporation by its absence to deprive the committee of evidence, and then allow the school corporation to assert the defense that the committee failed to consider some undisclosed fact. If as a member of a musical trio you ignore a scheduled concert, you cannot complain if the other two play the wrong tune.

In a similar situation involving an administrative proceeding to determine the ownership of certain boats for property tax purposes, the third district of this court found the principle of invited error to be applicable to administrative proceedings.

"It is a well established principle in this state that a party may not take advantage of those errors in a judicial proceeding which the party commits or invites or which are the natural consequence of the party's neglect or misconduct. Although not previously applied to an administrative proceeding, we find this principle to be particularly applicable to the facts of the present case. Marina complains the

Board erred—formulating such alleged error as an arbitrary and capricious action—in assessing the boats to Marina. However, Marina not only invited this alleged error, but the Board's assessment was the natural consequence of Marina's actions."

*Tax Comm'rs v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, 730 (citations omitted).

Thus, by intentionally not participating in the committee's deliberations, the school corporation waived any right it had to complain as to the decision reached and could be said to have invited any error resulting from its own inactivity. By so holding, we are not deciding and need not decide whether the committee's decision was arbitrary and capricious. We hold only that the trial court erred by allowing the school corporation to attack the committee's decision by raising a defense which had been waived. Under the circumstances of this case and for the reasons stated above, the decision of the committee must stand.

Reversed and remanded for proceedings consistent herewith.

SULLIVAN and SHIELDS, JJ., concur in result.