Jeff **KOEHLINGER** and Jeff Frazier, individually and as class representatives of all others similarly situated, Appellants/Plaintiffs,

v.

The STATE LOTTERY COMMISSION OF INDIANA, Appellee/Defendant.

No. 49A02–1003–CT–247.

Court of Appeals of Indiana.

Sept. 7, 2010.

Richard A. Waples, Jaunae M. Hanger, David R. Brimm, Waples & Hanger, Indianapolis, IN, Attorneys for Appellants.

Jon Laramore, James P. Hanlon, Matthew T. Albaugh, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellants/Plaintiffs Jeff Koehlinger and Jeff Frazier, as individuals and as class representatives of all others similarly situated ("Appellants"), appeal from the trial court's grant of summary judgment in favor of Appellee/Defendant the State Lottery Commission of Indiana ("the Lottery"). The Lottery contends that the trial court should have entered summary judgment in its favor on the ground that the Appellants did not exhaust their administrative remedies. Appellants contend that the trial court erred in concluding that the Lottery was entitled to summary judgment on their claims of contract rescission, false advertising, negligence, negligent misrepresentation, unjust enrichment, restitution, and money had and received. Concluding that the trial court erred in granting summary judgment in favor of the Lottery on Appellants' contract claim, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Most of the underlying facts of this case are not in dispute. The Lottery is authorized by the General Assembly to "enable the people of Indiana to benefit from significant additional money for capital improvements." Ind.Code § 4–30–1–1 (2010). The Lottery offers and has offered various scratch-off games, including "Cash Blast," which began in December of 2004. The Lottery posts information regarding scratch-off games on its website, including the number of prizes not yet claimed. Approximately 5 million Cash Blast tickets were available for purchase, at a price of $10 apiece. Prizes were available in amounts of $10, $20, $50, $100, $200, $500, $1000, $10,000, and $250,000, and, as stated on the tickets, the odds of purchasing a winning card of any denomination was one in 3.29. Cash Blast included ten winning tickets at the $250,000 level. Approximately $36,688,000 in prizes were available to be won in Cash Blast, for an aggregate return-to-player ("RTP") of approximately 73.4 percent of the money spent on tickets.[1]

In early 2005, approximately 2.5 million Cash Blast tickets had to be replaced prior to sale due to a manufacturing defect. The Lottery's computer system that tracked the number of unclaimed prizes, however, treated the replacement tickets as *additional* tickets, resulting in, *inter alia*, an overstatement of slightly more than fifty percent of unclaimed prizes on the Lottery website at the time.[2] For

1. RTP is to be distinguished from "odds," which, as used in Cash Blast, are the likelihood that any one game ticket will be a winner. In our view, RTP is the more accurate way to estimate the value of chance to the player of buying a lottery ticket. Based on the 73.4% RTP of Cash Blast, each $10 ticket was "worth" approximately $7.34.

2. This overstatement became significantly more pronounced over time. The following table lists the Cash Blast prizes shown on the Lottery's website as supposedly unclaimed on June 22, 2006 (before the error was discover-

ed), and July 7, 2006 (after the error was discovered):

| Prize amount | Number of prizes listed as unclaimed on June 22, 2006 | Number of prizes listed as unclaimed on July 7, 2006 |
|---|---|---|
| $250,000 | 7 | 1 |
| $10,000 | 75 | 10 |
| $1000 | 689 | 47 |
| $500 | 1156 | 95 |
| $200 | 8150 | 657 |
| $100 | 27738 | 2165 |
| $50 | 27733 | 2215 |
| Totals | 65570 | 5197 |

example, at the time of the error, the Lottery website indicated that thirteen $250,000 prizes were unclaimed when, in fact, there were only eight.

In the summer of 2006, the Lottery became aware of the error on its website after a player contacted it regarding where he could purchase Cash Blast tickets. The Lottery checked its inventory of Cash Blast tickets and discovered that ninety-eight percent of them had been sold. The Lottery's computer system, however, indicated that only sixty-five percent of Cash Blast tickets had been sold. Upon discovery of the error, the Lottery posted a message on its website explaining the error. Shortly thereafter, several Cash Blast players contacted the Lottery expressing displeasure that the number of prizes available had been overstated on the website. None of the Lottery's responses to these players indicated that any administrative process was available to address their concerns.

In particular, the Lottery's responses to players requesting that it "make this right" neither initiated administrative process nor provided information regarding the availability of such process. Plaintiff's Ex. 12 p. 5. The Lottery's responses to players dissatisfied with its explanation of the error neither initiated administrative process nor provided information regarding the availability of such process. The Lottery's responses to players requesting refunds or other compensation neither initiated administrative process nor provided information regarding the availability of such process. The Lottery's responses to players stating or implying that they would take the matter to court neither initiated administrative process nor provid-

ed information regarding the availability of such process.

On July 10, 2006, named plaintiff Koehlinger wrote the Lottery and requested "an appropriate response[,]" but the Lottery's response neither initiated administrative process nor provided information regarding the availability of such process. Plaintiff's Ex. 12 p. 37. On August 29, 2006, Koehlinger again wrote the Lottery, requesting a refund for 231 losing Cash Blast tickets. Koehlinger's communication included the following language:

Please consider this written communication an official request of complaint. If there is some sort of administrative remedy that you offer, please consider this a request for that remedy. If I need to complete some form other than this letter in order to invoke that procedure, please send me any such form.

Plaintiff's Ex. 12 p. 169. The Lottery's response the next day indicated that it would not compensate Koehlinger for any losing Cash Blast tickets and did not indicate that any additional administrative remedy was available.

In January of 2007, the Lottery initiated a program whereby any person who held a Cash Blast ticket purchased between May 18, 2005, and July 6, 2006, could redeem the ticket for a ten-dollar coupon for a scratch-off ticket of the person's choice. On March 29, 2007, however, the Lottery posted a notice on its website and sent letters to it retailers indicating that Cash Blast tickets and claim forms submitted for redemption would have to be postmarked no later than April 30, 2007, in order to be considered.

Meanwhile, on January 5, 2007, Plaintiffs filed suit against the Lottery, requesting certification of a class of those who had

---

So, near the end of the overstatement period, the total number of unclaimed Cash Blast prizes was overstated by approximately 1260 percent.

bought non-winning Cash Blast tickets between May 2005, and July 7, 2006. Plaintiffs raised claims of negligent misrepresentation, negligence, breach of contract, fraud, money had and received, restitution, unjust enrichment, and deceptive sales practices under Indiana's Deceptive Consumer Sales Act ("DCSA"). On April 2, 2007, the Lottery filed a motion to dismiss, which the trial court denied on February 1, 2008. On July 7, 2008, the trial court granted the Plaintiffs' motion for class certification. On September 16, 2008, this court denied the Lottery's request to accept jurisdiction of an interlocutory appeal of the trial court's certification of the class.

On August 28, 2009, the Plaintiffs filed a motion for summary judgment. On September 1, 2009, the Lottery filed a motion for summary judgment. On March 8, 2010, the trial court denied the Plaintiffs' motion for summary judgment and granted the Lottery's.

## DISCUSSION AND DECISION

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in

fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

## I. Whether the Trial Court Erred in Failing to Grant the Lottery Summary Judgment on the Basis that the Plaintiffs had Failed to Exhaust Their Administrative Remedies

Both sides acknowledge that the Lottery and claims against it are subject to the Administrative Orders and Procedures Act ("AOPA"). The Lottery contends that the Appellants did not exhaust the administrative remedies available to them while the Appellants argue that they should be excused from the exhaustion requirement because no adequate remedy existed at the time their claims became ripe.

There exists a strong bias in case law in favor of the requirement that administrative remedies be exhausted. The objective of such a requirement is to avoid collateral, dilatory action, ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review, and provide an agency with an opportunity to correct its own errors and to compile a factual record as necessary for judicial review. *Austin Lakes [Joint Venture v. Avon Utilities, Inc.]*, 648 N.E.2d [641, 649 (Ind.1995).]

Be that as it may, we recognize that there are exceptions to the requirement of exhaustion of remedies at the agency level. For instance, a party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. *Indiana State Building and Construction Trades Council v. Warsaw Community School Corp.*, 493 N.E.2d 800, 806 (Ind.Ct.App.1986). To prevail upon a

claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id.* Furthermore, the requirement of exhaustion of administrative remedies "will be relaxed where there is grave doubt as to the availability of the administrative remedy." *Indiana High Sch. Athletic Ass'n v. Raike,* 164 Ind.App. 169[, 195], 329 N.E.2d 66, 82 (1975)[, implied overruling on other grounds recognized by *Bojrab v. Bojrab,* 810 N.E.2d 1008 (Ind. 2004) ].

*Smith v. State Lottery Comm'n of Ind.,* 701 N.E.2d 926, 931 (Ind.Ct.App.1998), *trans. denied.*

In *Smith,* on which the Appellants rely, the plaintiff had purchased a lottery ticket that turned out to be a five dollar winner, but was denied payment by a retailer on the basis that he failed to redeem the ticket within sixty days of the end of the game. *Id.* at 928. Smith went to the principal office of the Lottery and was again denied payment and told that nothing could be done to obtain his prize. *Id.* Although the ticket in question stated that all prizes were to be claimed within sixty days of the announced end of the game, no closing date for the game was posted at the retailer, the Lottery did not publish one in the Indiana Administrative Code, and neither the retailer nor the Lottery advised Smith of an administrative process or provided him with any kind of claim form. *Id.*; *id.* n. 3.

Smith filed suit against the Lottery for breach of contract seeking damages on behalf of himself and all others similarly situated. *Id.* The Lottery filed a motion to dismiss, contending that Smith had failed to exhaust his administrative remedies. *Id.* The trial court agreed with the Lottery that an administrative process existed and that Smith had failed to avail himself of it and therefore granted the Lottery's motion to dismiss. *Id.*

In reversing the trial court's dismissal, we first noted Smith's difficulty in determining when the game was to end, which apparently the Lottery did not publicize at all and which could have come at any time. *Id.* at 931. Second, we noted the difficulty Smith had in initiating an administrative proceeding with the Lottery, although it claimed that such a process was available. *Id.* In the end, we concluded that Smith could be excused from the exhaustion requirement because there was " 'grave doubt as to the availability of an administrative remedy.' " *Id.* at 932 (quoting *Raike,* 164 Ind.App. at 195, 329 N.E.2d at 82).

We reach the same result here. The designated evidence contains myriad examples of persons attempting to contact the Lottery regarding the website error, and there is no indication that any of these contacts was successful in initiating any kind of administrative process. Simply put, it seems that the Lottery had no mechanism for addressing player concerns of this type at the time, leaving us in grave doubt as to the availability of an administrative remedy.

Moreover, we cannot agree that the Lottery's losing-ticket redemption program qualifies as an administrative remedy that needed to be exhausted for purposes of AOPA, as it did not exist when the Plaintiffs' claims became ripe. We are cognizant of the strong public policy considerations weighing in favor of having administrative grievances aired and resolved in the agency first, including that "[p]remature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors." *State Bd. of Tax Comm'rs v.*

*Montgomery,* 730 N.E.2d 680, 684 (Ind. 2000). If we allowed agencies to fashion post hoc remedies, however, it is difficult to see where it would all end; all an agency would ever have to do to avoid litigation or final resolution of any dispute would be to devise yet another "remedy" to be exhausted.[3] While we are strongly inclined, as a general rule, to allow the Lottery—or any other agency—the opportunity and autonomy to correct its own errors, that particular ship has sailed in this case. The trial court did not err in failing to grant the Lottery summary judgment on exhaustion grounds.

## II. Contract Rescission

Appellants contend that the trial court erred in not addressing their contract rescission claim and in apparently concluding that it may not move forward. Appellants note that they entered into contracts with the Lottery when they bought Cash Blast tickets and argue that they should be able to rescind those contracts due to both a material misrepresentation by the Lottery and a mutual mistake of fact by the parties. We need not address the Appellants' second contention, because their first is dispositive of this issue.

"The doctrine is well settled that where a party to a contract makes a misrepresentation as to a material existing fact, and, without means at hand of knowledge, 'the one to whom it is made believes it to be true, relies and acts upon it' to his prejudice, he may, in a court of equity, rescind it, if the parties can be placed *in statu quo,* whether the falsity of the representation was known to the party making it or not."[4] *Gardner v. Mann,* 36 Ind. App. 694, 698, 76 N.E. 417, 418 (1905) (citations omitted) (cited favorably by *Franklin v. White,* 493 N.E.2d 161, 164 (Ind.1986)). It is undisputed that the Lottery misrepresented the number of Cash Blast prizes remaining and that the Appellants had no means at hand to discover the true number. The Lottery does not argue that the misrepresentation was not material, and we would have had little trouble concluding that it was in any event. Moreover, it is of no importance that website listings of unclaimed prizes were not, strictly speaking, part of the contract. *See Franklin,* 493 N.E.2d at 163–65 (concluding that oral misrepresentation regarding suitability of septic system for real estate was sufficient to support contract rescission where such suitability was not mentioned in contract).

The question, then, is whether the Appellants have designated evidence tending to show detrimental reliance. The designated evidence, at least in the cases of *some* class members, tends to establish scenarios that seem to fit squarely within the doctrine stated in *Gardner.* There is ample designated evidence that several class members relied on the misinformation on the Lottery's website when deciding to purchase Cash Blast tickets. It is reasonable to infer that many of these players also suffered prejudice as a result.[5]

3. If a person with a claim against an administrative agency decides to accept such a "remedy" as an offer to settle, he is, of course, free to do so.

4. The version of this citation found in the *www.westlaw.com* database omits the word "he" and fails to italicize *"In statu quo."* While these errors do not seem to alter the meaning of the citation, we will continue to exercise caution in citing to non-official authorities.

5. Because of the nature of the contract here, *i.e.,* sale of a chance to win cash prizes as opposed to a more-easily-defined product or service, a few words regarding prejudice are in order. Proof that one purchased a Cash Blast ticket in reliance on the misinformation is not sufficient, standing alone, to show prej-

We conclude that the trial court erred to the extent that it granted summary judgment in favor of the Lottery on Appellants' contract rescission claim and remand for trial on the issue of detrimental reliance. If a player can prove to the trial court [6] that he or she relied on the Lottery's misinformation to his or her detriment, that player will be entitled to rescission.[7]

### III. DCSA

 Appellants contend that the trial court erred in concluding that the Lottery enjoys immunity under the DCSA. The Lottery contends that it is immune from the DCSA because its advertising activities are required or expressly permitted by state law.

The interpretation of a statute is a question of law, which is reserved for the courts. When interpreting a statute, we follow several rules of statutory construction. First, we do not interpret a statute that is facially clear and unambiguous. Rather, we give the statute its plain and clear meaning. Second, if a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. In so doing, we read a statute as a whole and strive to give effect to all of the provisions. Indeed, when construing a statute, all sections of an act are viewed together. Additionally, we will avoid an interpretation that renders any part of the statute meaningless or superfluous.

*Zanders v. State,* 800 N.E.2d 942, 944–45 (Ind.Ct.App.2003) (citations omitted).

The DCSA is to be "liberally construed and applied to promote its purposes and policies[, which] are to: (1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices; (2) protect consumers from suppliers who commit deceptive and unconscionable sales acts; and (3) encourage the development of fair consumer sales practices." Ind.Code § 24–5–0.5–1 (2010). To that end, the DCSA entitles a person relying upon one of several enumerated deceptive acts to recover "damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." Ind.Code § 24–5–0.5–4 (2010). The DCSA does not apply, however, to "an act or practice that is ... required or expressly permitted by state law, rule, regulation, or local ordinance." Ind.Code § 24–5–0.5–6(2) (2010).

While we are unconvinced that any state law *requires* the Lottery to promote and advertise, Indiana Code section 4–30–3–

---

udice. After all, if the player simply diverted money to Cash Blast away from a game of chance with a lower RTP than Cash Blast, he was actually better off, although perhaps not as well-off as he thought he was. On the other hand, a class member who can establish that he bought Cash Blast tickets in reliance on the misinformation using money that would not otherwise have been spent has shown prejudice. Additionally, a class member who can prove that he diverted funds to Cash Blast that would have otherwise been spent on a game of chance with a higher RTP has shown prejudice. These are not trivial concerns, as it seems likely that several class members diverted money to Cash Blast from other games of chance.

6. Because contract rescission is a claim sounding in equity, it will be heard by the bench and not a jury. *See Songer v. Civitas Bank,* 771 N.E.2d 61, 63 (Ind.2002) ("[I]t is a well-settled tenet that a party is not entitled to a jury trial on equitable claims.").

7. The Lottery contends that allowing rescission for Appellants would force players to disgorge winnings as well. While this might be true in a case of mutual mistake of fact, misinformation cases are a decidedly one-way street. No such disgorgement will be required because the Lottery cannot show detrimental reliance on misinformation it produced.

8(a) (2010) clearly states that the Lottery "may promote and advertise the lottery." There can be little doubt that that part of the Lottery's website listing remaining prizes in scratch-off games is a promotional or advertising tool designed to encourage purchases. As such, it is activity expressly permitted by Indiana Code section 4–30–3–8(a). Although Appellants argue that the General Assembly could not have intended for the Lottery's actions to be immune from the DCSA for various reasons, there is no wiggle room in the plain language of the statutes in question. As previously mentioned, we will not interpret statutes that are, as here, facially clear and unambiguous. *See Zanders,* 800 N.E.2d at 944. The trial court properly granted the Lottery summary judgment on Appellant's DCSA claim.

### IV. Negligence and Negligent Misrepresentation

■ Appellants contend that the trial court erred in granting summary judgment in favor of the Lottery on its tort claims of negligence and negligent misrepresentation. Although the Lottery contends that neither of these torts may be pursued because negligent misrepresentation is limited in Indiana to an employment context and Appellants' negligence claim is essentially the same claim, we conclude that they cannot be pursued for a more fundamental reason.

■ All agree that the Appellants and the Lottery have entered into contracts. "The rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Greg Allen Const. Co. v. Estelle,* 798 N.E.2d 171, 175 (Ind.2003). As in *Greg Allen Construction,* the question is not whether Appellants have, as we assume, adequately pled their tort claims, but,

rather, whether the Lottery is alleged to have done anything that "constituted an independent tort if there were no contract." *Id.* at 173.

Here, Appellants have alleged nothing that would be an actionable tort without the contract they entered into with the Lottery. The allegations, however they are styled, are all essentially that Appellants were duped into purchasing Cash Blast tickets by false information on the Lottery's website. Without the purchase that completed the formation of the contract, there could be no possibility of damages. Appellants have failed to allege anything that would constitute an independent tort in the absence of a contract, and are therefore limited to remedies arising from that contract. The trial court properly granted summary judgment in favor of the Lottery on Appellants' tort claims.

### V. Quasi–Contractual Claims

Finally, Appellants contend that the trial court erred in dismissing its quasi-contractual claims for unjust enrichment, money had and received, and restitution. As with the tort claims, however, Appellants may not pursue these claims due to their contract with the Lottery. *See Wenning v. Calhoun,* 827 N.E.2d 627, 630 (Ind.Ct.App. 2005) ("[R]estitution, in the form of quasi contract, is available to the court if no contract exists."), *trans. denied; DiMizio v. Romo,* 756 N.E.2d 1018, 1025 (Ind.Ct. App.2001) ("Unjust enrichment operates when there is no governing contract."), *trans. denied; Shelby Eng'g Co. v. Action Steel Supply, Inc.,* 707 N.E.2d 1026, 1028 (Ind.Ct.App.1999) ("There is no question that the existence of an express contract precludes recovery on the equitable theory of money had and received."). The trial court did not err in granting summary judgment in favor of the Lottery on Appellants' quasi-contractual claims.

## Conclusion

The trial court correctly refused to grant the Lottery summary judgment on its claim that Appellants had failed to exhaust their administrative remedies. The trial court correctly granted summary judgment in favor of the Lottery on Appellants' tort, DCSA, and quasi-contractual claims. The trial court, however, erred in granting summary judgment in favor of the Lottery on Appellants' contract rescission claim, and we therefore remand for further proceedings not inconsistent with this opinion, up to and including bench trial, if necessary.

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

MATHIAS, J., concurs.

RILEY, J., concurs in part and dissents with separate opinion.

RILEY, J., concurring in part and dissenting in part.

I respectfully disagree with the majority's opinion in the resolution of this case. While I concur with the majority on the denial of the Lottery's claim that Appellants had failed to exhaust their administrative remedies and its decision on Appellants' DCSA and quasi-contractual claims, I concur in result with respect to Appellants' contract rescission claim, and dissent on the majority's handling of Appellants' negligence claim.

### I. *Contract Rescission Claim*

It is well established that rescission is a proper remedy when the parties to a contract are mistaken about a material fact underlying the contract. Here, the majority opines and the Lottery does not contest that a material misrepresentation occurred when the Lottery misrepresented the number of Cash Blast prizes remaining without Appellants having the means to discover the true number. *See* Op. p. 541. However, whereas the majority decides this issue based on the material misrepresentation theory, I focus my decision on the mutual mistake of material fact doctrine. Because the majority's solution still requires each individual class member to establish detrimental reliance, I believe my outcome better reflects the economic realities and the judicial efficiency of a class action suit.

Equitable relief, *i.e.* rescission of the contract and the return of the purchase price of the Cash Blast tickets, may be granted if a contract is based upon a mutual mistake of material fact. *Hancock v. Ky. Cent. Life Ins. Co.*, 527 N.E.2d 720, 723 (Ind.Ct.App.1988), *trans. denied.* As properly stated by the trial court, "[b]y over reporting its prizes by half, the Lottery was representing to the public that Cash Blast tickets had characteristics which they did not have, those being that the game provided the chance not only to win the prizes which were actually available, but to win prizes which were not available." (Appellants' App. pp. 754–55). It is undisputed that both the Lottery and the Appellants were mistaken about the prizes available to be won. As such, the trial court should have granted Appellants' motion for summary judgment on their contractual rescission claim and I would remand this case to the trial court for a determination of damages.

### II. *Negligence*

With respect to Appellants' negligence claim, I dissent from the result reached by the majority. Mindful that summary judgment is rarely appropriate on allegations of negligent behavior, I find that Appellants' designated evidence support a genuine issue of material fact with respect to the existence of a negligence claim.

It is well established that a plaintiff may plead alternative theories of liability in a complaint and proceed under either or both. Ind. Trial Rule 8(E)(2). In this light, Appellants pled both a contractual claim and a negligence claim in their complaint on the understanding that the negligence claim may only be successful in conjunction with a pled contract claim if the designated evidence independently establishes the elements of the pled tort. *See Greg Allen Const. Co., Inc. v. Estelle,* 798 N.E.2d 171, 175 (Ind.2003).

To recover under a negligence theory, a plaintiff must prove (1) a duty on the part of the defendant owed to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach. *Coffman v. PSI Energy, Inc.,* 815 N.E.2d 522, 527 (Ind.Ct.App.2004). A duty, when found to exist, is the obligation to exercise reasonable care under the circumstances. *Goodrich v. Indiana Michigan Power Co.,* 783 N.E.2d 793, 796 (Ind. Ct.App.2003), *trans. denied.* Here, the Lottery had a duty to exercise reasonable care not to misinform its customers about the remaining prizes in its Cash Blast game. (*See also* Ind.Code § 4–30–1–2(6): "That lottery game advertising and promotion shall be consistent with the dignity and integrity of the state"). The Lottery breached that duty when it failed to accurately represent the number and prizes available in its instant game. Specifically, the evidence reflects that the Lottery admitted that it was a mistake not to delete the separate electronic files from its computers for the prizes attributable to those withdrawn tickets and equally admits that it was a mistake not to catch this when reporting this daily for fourteen months. Appellants present evidence claiming injury after relying on these false representations. As such, I believe that there are issues of material fact which require Appellants' negligence claim to be presented to a jury. I would reverse the trial court on this issue.