**DEAN V. KRUSE FOUNDATION, INC.,
Dean V. Kruse, and Kruse International, Appellants/Defendants,**

v.

**Jerry W. GATES, Appellee/Plaintiff.**

No. 59A01–1001–CT–125.

Court of Appeals of Indiana.

Aug. 26, 2010.

John R. Price, Price Owen Law, Indianapolis, IN, Attorney for Appellants.

Geoffrey M. Grodner, Kendra G. Gjeringen, Pamela J. Hensler, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

The Dean V. Kruse Foundation, Inc., Dean V. Kruse, and Kruse International (collectively, "the Kruse Parties") appeal a summary judgment entered in favor of Jerry W. Gates and the denial of their cross-motion for summary judgment. We reverse and remand.

### Issues

We restate the issues as follows:

I. Did the trial court err in granting Gates's motion for summary judgment and denying the Kruse Parties' cross-motion on the parties' breach of contract claims?

II. Did the trial court err in failing to grant the Kruse Parties' cross-motion for summary judgment on Gates's fraud claims?

III. Did the trial court err in failing to grant the Kruse Parties' cross-motion for summary judgment on Gates's conversion claim?

### Facts and Procedural History

The relevant facts are undisputed. In 2003, Kimball International ("Kimball") donated to the Dean V. Kruse Foundation ("the Foundation") a 42.79–acre tract of land in West Baden Springs ("the Property"). The Foundation listed the Property to be sold at auction on July 12, 2006. At the auction, bidders were required to register at a table, at which Kruse International had set out copies of documents with information pertinent to the Property. These documents included a fact sheet, an auction brochure, an aerial photograph of the Property, an environmental disclosure,

various lease agreements between the Foundation and its lessees, and the Foundation's motion for summary judgment in an action against the Town of West Baden ("the Town") to quiet title to a disputed right-of-way on the Property. The fact sheet contained the following information relevant to the quiet title action regarding the Property:

2005—November—After negations [sic] to have the building donated to them or sold at a reduced rate the Town of West Baden notified the Dean V. Kruse Foundation of a purported road right of way through the property platted in 1902 and never improved. The road was vacated in 1921 and the City of French Lick has stated they have no interest in putting a road on their portion of the property.

. . . .

2006—March—Dean V. Kruse Foundation completed the environmental cleanup required in the Phase II report with the supervision and direction of NSS Environmental. The Dean V. Kruse Foundation filed a Quiet Title Action against the [Town] regarding the purported road right of way.

. . . .

2006—June—Dean V. Kruse Foundation announces sales of property to new owner at public auction to be held on July 12, 2006. The Dean V. Kruse Foundation filed a Motion for Summary Judgment regarding the purported road right of way to settle any discrepancies.

Appellants' App. at 381.

As part of the registration process, each bidder filled out a bidder's registration card. The registration card contained a statement that the bidder "understand[s] that all purchases are AS IS, WHERE IS and without any warranties or guarantees." *Id.* at 248. This statement was repeated on the reverse side of the registration card as point one of the ten-part buyer's agreement. Point seven of the buyer's agreement expressly stated that "[a]ll terms of sale posted on the auction premises, printed in sale brochures, forms, signs, publicly announced, or otherwise published are incorporated herein by reference." *Id.* at 249. The registration card contained a signature line, by which each bidder's signature verified that he had "read and accept[ed] the terms of sale contained in the Buyer's Agreement on the reverse side of this card." *Id.* at 248. Before the auction began, Dean Kruse personally addressed the bidders and expressly disclosed the pending action to quiet title regarding the Property. *Id.* at 152, 341, 376.

Gates, a professional commercial real estate developer with nearly forty years' experience, attended the July 12, 2006 auction and registered to bid on the Property. He signed the bidder's registration card, by which he acknowledged that he had read and accepted the terms of sale contained in the buyer's agreement. *Id.* at 248. He read the fact sheet but did not make any inquiries about the disputed right-of-way before bidding on the Property. He later stated in his deposition, "I suppose I had the opportunity [to inquire] certainly. I did not feel the necessity to do it." *Id.* at 452–53. There were twelve bidders, and Gates's bid of $4,000,000.00, plus a five-percent premium, was the highest bid. At the end of the auction, Gates tendered $100,000.00 in earnest money and executed the purchase agreement, which provided in part, "At time of conveyance, as provided herein, owner shall deliver a warranty deed conveying to purchaser a good title to the property, free and clear of all liens and encumbrances, except . . . (b) restrictions, easements and conditions of record[.]" *Id.* at 129. The purchase agreement included a provision requiring the

seller to refund the buyer's earnest money if

the title to the above described property is found defective and said defects cannot be remedied within a reasonable time. However, if the buyer fails to complete the purchase within a reasonable time due to no fault of the seller, then the earnest money deposited is forfeited, and seller may sue for specific performance.

*Id.*

On July 18, 2006, Chicago Title Insurance Company issued a title insurance commitment containing an exception for the "Pending proceedings for Complaint to Quiet Title filed March 6, 2006[.]" *Id.* at 145. On August 9, 2006, Gates made a written request for the Kruse Parties to return his earnest money. The Kruse Parties denied Gates's request.

On October 4, 2006, Gates filed suit against the Kruse Parties, alleging breach of contract, fraud, and conversion. On November 27, 2006, the Kruse Parties filed a counterclaim against Gates, alleging breach of contract and slander of title. On February 27, 2009, Gates filed a motion for partial summary judgment on the breach of contract claim, alleging that the Kruse Parties lacked marketable title to the Property due to the pending litigation concerning the Town's purported right-of-way on the Property. On July 10, 2009, the Kruse Parties filed a response and cross-motion for summary judgment, alleging that due to Gates's prior knowledge of the pending litigation, he purchased the property subject thereto and therefore was not entitled to the return of his earnest money pursuant to the purchase agreement. The Kruse Parties also moved for summary judgment on the fraud and conversion claims.

On October 19, 2009, the trial court held a summary judgment hearing. On December 21, 2009, the trial court issued findings of fact and an order granting Gates's motion for summary judgment and ordering the Kruse Parties to refund Gates's earnest money with interest. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Breach of Contract Claims

■ The Kruse Parties contend that the trial court erred both in granting Gates's motion for summary judgment and in denying their cross-motion for summary judgment on Gates's breach of contract claim and on their counterclaim for breach of contract. When reviewing a trial court's entry of summary judgment, we view the same matters and issues that were before the trial court and follow the same process. *DLZ Indiana, LLC v. Greene County*, 902 N.E.2d 323, 327 (Ind. Ct.App.2009). As such, we are not bound by the trial court's factual findings. *West Bend Mut. Ins. Co. v. 1st Choice Ins. Servs.*, 918 N.E.2d 684, 689 (Ind.Ct.App. 2009). Summary judgment is appropriate where the designated evidence demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party bears the burden of proof, and we construe all facts and reasonable inferences in favor of the non-moving party. *DLZ Indiana*, 902 N.E.2d at 327. "When the parties have filed cross-motions for summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608 (Ind.Ct. App.2008), *trans. denied.*

■ Because the record before us indicates no genuine issue of material fact, the issue is one of contract interpretation.

As such, we apply a de novo standard of review. *Koors v. Steffen*, 916 N.E.2d 212, 215 (Ind.Ct.App.2009).

The goal of contract interpretation is to ascertain and give effect to the parties' intent. In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. Thus, we will determine the intent of the parties to a contract by the four corners of the contract.

*Id.* (citation and quotation marks omitted).

Here, the purchase agreement clearly addressed the eventual fate of the earnest money: if the *seller failed*, within a reasonable time, to meet its duty regarding the quality of title to the property, then the buyer was entitled to a refund; if the *buyer failed* to close the sale, then the seller was entitled to retain the earnest money. Appellants' App. at 129. The purchase agreement also specifically addressed the extent of the seller's duty regarding the quality of the title to be conveyed to the buyer: the seller was required to deliver to the buyer a warranty deed conveying "good title to the property, free and clear of all liens and encumbrances, *except* ... (b) restrictions, easements and *conditions of record* [.]" *Id.* (emphases added).

We conclude that the disputed right-of-way was a condition of record. The plat showing the purported right-of-way was part of the real estate records maintained in the Orange County Recorder's Office. *Id.* at 591. Land surveyor Mark Duffy testified by affidavit that he learned of the purported right-of-way during the course of performing a land title survey on the Property. *Id.* at 569. Thus, the right-of-way was clearly a condition of record within the terms of the purchase agreement.[1]

Moreover, Gates was placed on both constructive and actual notice of the disputed right-of-way when he bid on the Property. He was on constructive notice of the encumbrance contained in the plat in the county recorder's office. *See Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind.1989) (stating that purchaser of real property is charged with constructive notice of facts recited in real property records showing encumbrances). In addition, the uncontroverted evidence shows that he had actual notice of the disputed right-of-way and the pending lawsuit surrounding it. The buyer's agreement, which he acknowledged and accepted via signature prior to placing his bid, incorporated by reference "all terms of sale posted on the auction premises, printed in sale brochures, forms, signs, publicly announced, or otherwise published." Appellants' App. at 249. Not only did Dean Kruse make a pre-auction announcement regarding the quiet title action pending against the Town, but also the Kruse Parties provided numerous documents at the registration table, some of which specifically addressed the pending action. For example, the fact sheet contained three references to it, and copies of the Kruse Parties' motion for summary judgment against the Town were made available for the bidders' perusal. Gates, an experienced developer, admitted that he read the fact sheet, but stated that he felt no need to make further inquiry about the pending action.

In sum, Gates was notified of a "condition of record" yet chose not to inquire further before he purchased the property. The uncontroverted facts indicate that

---

1. We also note that the pending lawsuit concerning the purported right-of-way was a matter of public record. *See Near East Side Cmty. Org. v. Hair*, 555 N.E.2d 1324, 1335 (Ind.Ct.App.1990) (stating that lawsuits are a matter of public record).

Gates "fail[ed] to complete the purchase within a reasonable time due to no fault of the seller[;]" thus, "the earnest money [he] deposited is forfeited." *Id.* at 129. As such, the Kruse Parties are entitled to summary judgment on Gates's breach of contract claim and summary judgment on their counterclaim for breach of contract. In their counterclaim, the Kruse Parties request "all damages incurred as a result of the breach ... including all transaction costs, auction fees, buyer premiums, realtor commissions, costs of collection and reasonable attorney fees, and for all other proper relief." Appellants' App. at 74–75. Because the record before us does not include this information, we reverse and remand for a determination of damages.

## II.  Fraud Claims

■ The Kruse parties also contend that the trial court erred in failing to grant their cross-motion for summary judgment on Gates's fraud claims. Notably, the trial court's order does not address the fraud allegations at all. Thus, we are left only with the trial court's implied denial of the Kruse Parties' cross-motion based on its granting of Gates's summary judgment motion on the breach of contract claim.[2]

■ Nevertheless, we conclude that the undisputed material facts do not support a claim for fraud. To prevail on a fraud claim, a plaintiff claiming both breach of contract and fraud must prove that the breaching party committed the separate and independent tort of fraud and that such fraud resulted in injury distinct from that resulting from the breach of contract. *Tobin v. Ruman,* 819 N.E.2d 78, 86 (Ind. Ct.App.2004), *trans. denied* (2005). Here, Gates neither specifically alleged nor specifically proved a distinct injury, and the

trial court awarded him damages only on his contract claim.

■ Moreover, we note that Gates, an experienced professional developer, admitted that he had read the fact sheet and was aware of the pending action to quiet title regarding the disputed right-of-way. He also admitted that he felt no need to inquire about the impact the dispute might have on title. To prevail on a fraud claim, the plaintiff must establish reasonable reliance upon a material misrepresentation by the defendant. *Id.* Here, Gates was neither misled nor acted in reasonable reliance. Thus, the Kruse Parties were entitled to summary judgment on Gates's fraud claims, and to the extent the trial court failed to grant the Kruse Parties' motion for summary judgment on this claim, it erred.

## III.  Conversion Claim

■ Finally, the Kruse Parties contend that the trial court erred in failing to grant their cross-motion for summary judgment on Gates's conversion claim. Again, in its order, the trial court does not expressly deny the Kruse Parties' cross-motion for summary judgment on Gates's conversion claim or award damages. Instead, the court makes one brief allusion to retention of earnest money without reasonable justification within the context of awarding Gates the contract remedy of a refund of earnest money. Indiana Code Section 35–43–4–3 states that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Indiana Code Section 34–24–3–1 allows a civil claimant to recover treble damages, as well as costs and attorneys' fees, if he can prove by a preponderance of evidence the

---

**2.** We also note that Gates's brief contains inconsistent argument, alleging first, that genuine issues of material fact exist as to fraud, Appellee's Br. at 16–17, and second, that "[t]he undisputed material facts show that all the elements of fraud exist." *Id.* at 19.

elements of criminal conversion. However, our General Assembly did not intend to criminalize bona fide contract disputes. *French–Tex Cleaners v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind.Ct.App.2008). Thus, to establish the requisite *mens rea*, the plaintiff must show that the defendant was aware that there was a high probability that its control over the property was unauthorized. *Id.*

No such *mens rea* exists here. Gates's conversion claim was based on the Kruse Parties' retention of his $100,000.00 payment of earnest money; such retention was expressly allowed under the contract in the event of the purchaser's breach. Gates's conversion claim was nothing more than a repackaged version of his breach of contract claim, brought to "up the ante." *Id.* Because we hold that the undisputed material facts indicate that Gates made the purchase subject to the quiet title action, of which he was admittedly aware, the Kruse Parties were contractually entitled to keep the earnest money when Gates refused to close the sale. Thus, to the extent the trial court failed to grant the Kruse Parties' cross-motion for summary judgment on the conversion claim, it erred.

In sum, we reverse and remand with instructions to enter summary judgment in favor of the Kruse Parties on Gates's breach of contract claim as well as on the Kruse Parties' cross-motion for summary judgment on the issues of breach of contract, fraud, and conversion. We also instruct the trial court to hold proceedings to determine the damage award in favor of the Kruse Parties.

Reversed and remanded.

BAKER, C.J., and DARDEN, J., concur.