**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Mar 15 2012, 9:11 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ROBERT W. EHERENMAN**
**MELANIE L. FARR**
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
LIGHTHOUSE STORAGE, LLC:

**CRAIG D. DOYLE**
**MARK S. GRAY**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
LAWYERS TITLE INSURANCE
CORPORATION, LLC:

**WENDY K. WALKER-DYES**
Baker & Daniels LLP
South Bend, Indiana

**BRIAN P. CLIFFORD**
Baker & Daniels, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KSM, LLC, | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1106-PL-00232 |
| | ) | |
| LIGHTHOUSE STORAGE, LLC, | ) | |
| LAWYERS TITLE INSURANCE | ) | |
| CORPORATION, INC., and | ) | |
| KEVIN AND STEPHEN CORP., | ) | |
| Appellees. | ) | |

**March 15, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

KSM, LLC ("KSM") appeals from the trial court's orders granting summary judgment in favor of Lighthouse Storage, LLC ("Lighthouse") and Lawyers Title Insurance Corporation ("Lawyers Title"). KSM raises two issues, which we restate as:

> I. Whether the trial court erred in granting summary judgment for Lighthouse and granting its request to rescind a real estate purchase contract; and
>
> II. Whether the trial court erred in granting summary judgment for Lawyers Title on KSM's claim for negligent misrepresentation.

Lighthouse cross-appeals and argues that the trial court erred in granting summary judgment in favor of Barry Sturges ("Sturges"), a manager of KSM, on Lighthouse's fraud claim. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Facts and Procedural History**

Prior to 1993, KSM's predecessor[1] owned a tract of real estate along Lima Road in Fort Wayne, Indiana, which it developed as a shopping center known as the Cross Creek

---

[1] KSM's predecessor was KSKM, a general partnership. For purposes of clarity, we will refer to both KSM and KSKM as "KSM."

2

Shopping Center ("the Shopping Center"). In 1993, KSM sold a parcel of land in the northeast corner of the Shopping Center to Laurel Associates III Limited Partnership ("Laurel") for the purpose of constructing a Builder's Square store. The purchase agreement between KSM and Laurel provided that, at closing, KSM and Laurel would execute an "Easement Agreement" applicable to the land within the Shopping Center retained by KSM and the parcel purchased by Laurel ("the Builder's Square Parcel"), which would "provide for no buildings or improvements to be located on [KSM's] property ahead of or East of the Builder's Square building front wall[.]" Appellant's App. p. 423. According to representatives of Laurel and KSM, the intent of the agreement was to maintain an unobstructed view of the front of the Builder's Square store from Lima Road. Id. at 520, 556.

In accordance with the purchase agreement, and contemporaneously with the 1993 closing on the Builder's Square Parcel, KSM and Laurel entered into a "Reciprocal Easements, Covenants and Restrictions Agreement" ("the 1993 Agreement"). Appellant's App. p. 369. The 1993 Agreement applied to the Builder's Square Parcel as well as the tract of land within the shopping center retained by KSM. The 1993 Agreement identified a specific "Building Area" within the Shopping Center and provided "KSM and Laurel and their respective successors and assigns hereby agree that all structures constructed or to be constructed on the Tracts shall be located within the Building Areas." Appellant's App. p. 369. The Building Area identified within the 1993 Agreement included the portion of the Builder's Square Parcel on which the store was to

3

be built, as well as an adjacent parcel to the south, but not an unimproved parcel to the west of, or behind, the planned Builder's Square store. Appellant's App. p. 383. The 1993 Agreement also established a utility easement across KSM's land to the west of the Builder's Square Parcel. Sturges executed the 1993 Agreement on behalf of one of the general partners of KSM's predecessor, and the document was recorded on December 28, 1993.[2]

The parcel to the south of the Builder's Square Parcel was eventually sold to Kevin and Stephen Corp. ("KS Corp.") and developed as a Gander Mountain retail store ("the Gander Mountain Parcel"). Then, in August 2007, KSM and Lighthouse entered into an agreement for Lighthouse to purchase the parcel located behind the Builder's Square Parcel ("the Lighthouse Parcel"), on which Lighthouse intended to construct a self-service storage facility and unrelated office building.[3] Although KSM was aware of this intent, it failed to disclose the existence of the 1993 Agreement, which would prevent construction of any kind on the Lighthouse Parcel. KSM asserts that the Lighthouse Parcel was erroneously omitted from the Building Area identified in the 1993 Agreement as a result of a drafting error, and that KSM was unaware that the 1993 Agreement prevented construction on the Lighthouse Parcel because neither Laurel nor KSM ever intended such a result.

---

[2] The Builder's Square Parcel was eventually conveyed to Fort Wayne Lima Rd. Associates I, LLC, which now leases it as a Home Depot store.

[3] Mahogany Holding Company, LLC was the named purchaser in the purchase agreement for the Lighthouse Parcel. After the execution of the purchase agreement, Mahogany Holding Company formed Lighthouse for the purpose of purchasing the Lighthouse Parcel and assigned the purchase agreement to Lighthouse. For purposes of clarity, we will refer to both Mahogany Holding Company and Lighthouse as "Lighthouse."

As part of the purchase agreement, KSM was required to provide Lighthouse, at KSM's expense, with a title commitment issued by a title company acceptable to Lighthouse. To that end, KSM asked Lawyers Title to prepare a title commitment and issue a title insurance policy to Lighthouse for the Lighthouse Parcel. None of the title commitment documents prepared by Lawyers Title and provided to Lighthouse and KSM identified the 1993 Agreement as a title exception.

As required by the purchase agreement between KSM and Lighthouse, at the June 24, 2008 closing, KSM provided Lighthouse with a vendor's affidavit. The document, entitled "Vendor Closing Affidavit, Warranties, and Representations," ("Vendor's Affidavit"), was executed by Sturges in his capacity as a member of KSM, and provided that the final title commitment issued by Lawyers Title, dated April 22, 2008, "fully discloses, as of the date thereof, the complete and true condition of title to the Real Estate." Appellant's App. p. 127. The affidavit provided further that "the Real Estate is free and clear of all taxes, liens, encumbrances, easements, charges, or leases of whatsoever kind or nature, except those shown in the Title Commitment, and matters affecting the Real Estate disclosed in the Deed." Id. The warranty deed drafted and signed by KSM conveying the Lighthouse Parcel to Lighthouse stated that the conveyance was "subject to all easements, restrictions, and limitations of record, as well as all applicable zoning ordinances." Id. at 207.

Shortly after closing, in September 2008, Lighthouse discovered the existence of the 1993 Agreement. Concluding that the restrictive covenants set forth therein

prevented the development of the Lighthouse Parcel, Lighthouse informed KSM that the only practical options were for KSM to either remove the Lighthouse Parcel from the 1993 Agreement or repurchase the land. KSM immediately contacted the owners of the Builder's Square and Gander Mountain Parcels in order to obtain consents to amend the 1993 Agreement to allow construction on the Lighthouse Parcel. The owner of the Builder's Square Parcel executed a consent document on October 6, 2008, but KSM was initially unable to obtain consent from KS Corp., the owner of the Gander Mountain Parcel. After waiting more than two months, on December 5, 2008, while the issue remained unresolved, Lighthouse made a demand on KSM for rescission of the purchase.[4]

On December 10, 2008, KSM filed a complaint seeking declaratory judgment that the 1993 Agreement was unenforceable as to the Lighthouse Parcel and that Lighthouse was not entitled to rescission of the purchase contract and deed. The complaint also sought reformation of the 1993 Agreement to expressly allow Lighthouse to develop the Lighthouse Parcel as planned, and declaratory judgment that Lawyers Title had negligently prepared the title commitment and title insurance policy that were "hired and paid for by KSM and also upon which Lawyers Title knew that KSM would reasonably rely . . . in executing the Vendor's Affidavit[.]" Appellant's App. p. 36. On December 30, 2008, Lighthouse filed a counterclaim seeking rescission and damages against KSM, and also against Sturges in his individual capacity. Thereafter, Lighthouse, Lawyers

---

[4] KS Corp. eventually executed a consent document on March 6, 2009, after KSM amended its complaint to add KS Corp. as a party.

6

Title, KSM, and Sturges all filed motions for summary judgment. The trial court denied KSM's motion, entered summary judgment in favor of Lighthouse, and ordered rescission of the purchase contract and deed. The trial court also granted summary judgment in favor of Lawyers Title and Sturges. After the trial court denied KSM's motion to correct error on May 2, 2011, this appeal ensued.

**Standard of Review**

Both KSM and Lighthouse appeal from granted motions for summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's summary judgment ruling, we stand in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. First Farmers Bank & Trust Co. v. Whorley, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), trans. denied. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. Id. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. Id. at 608.

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party that lost in the trial court has the burden of demonstrating that summary judgment was improper. Haegert v. McMullan, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). Our standard of review is not altered where, as here, the parties have filed cross-motions for summary judgment; rather, we consider each motion separately to

7

determine whether the moving party is entitled to judgment as a matter of law.  Liberty

Country Club v. Landowners, 950 N.E.2d 754, 757 (Ind. Ct. App. 2011).  If the entry of

summary judgment can be sustained on any theory supported by the record, we will

affirm.  Hochstetler Living Trust v. Friends of Pumpkinvine Nature Trail, Inc., 947

N.E.2d 928, 930 (Ind. Ct. App. 2011).

## I. Lighthouse's Request for Rescission of the Purchase Contract

KSM argues that the trial court erred in granting summary judgment in favor of

Lighthouse and ordering rescission of the purchase contract.  In its brief in support of its

motion for summary judgment, Lighthouse argued that it was entitled to rescind the

transaction because KSM misrepresented the quality of title to the Lighthouse Parcel in

the Vendor's Affidavit, even if the misrepresentation was unintentional.  Appellant's

App. pp. 290-92.  In granting Lighthouse's motion, the trial court reached the following

conclusions:

> (1) [A]s a part of the closing on the subject real estate on June 24, 2009,
> [KSM] provided Lighthouse with a Vendor's Closing Affidavit which
> contained warranties and representations made about the subject real estate
> but did not reference or disclose utility-line easements contained in a 1993
> reciprocal easements, covenants and restrictions document made by
> [KSM's] predecessor [i.e., the 1993 Agreement], (2) the existence of the
> restrictions document was not made known by [KSM] to Lighthouse
> through, at a minimum, mistake on the part of [KSM], and (3) the existence
> of the restrictions document was material in that Lighthouse would not
> have completed the purchase of the real estate had the existence of the
> restrictions been made known to it.  Lighthouse is therefore entitled to its
> requested relief of rescission as a matter of law.

8

Appellant's App. p. 20.[5]  Thus, in granting Lighthouse's motion for summary judgment, the trial court accepted Lighthouse's position that it was entitled to rescind the transaction based on KSM's misrepresentation in the Vendor's Affidavit, even if that misrepresentation was made unintentionally.  See Franklin v. White, 493 N.E.2d 161, 164 (Ind. 1986) (holding that, absent any intent to deceive by the seller, a purchaser of real property may seek rescission where he has relied upon the seller's misrepresentations as to a material fact under a theory of "constructive or unintentional fraud"); see also Koehlinger v. State Lottery Comm'n of Ind., 933 N.E.2d 534, 540 (Ind. Ct. App. 2010), trans. denied; Gardner v. Mann, 36 Ind. App. 694, 694, 76 N.E. 417, 418 (1905).

KSM argues that under the doctrine of merger by deed, the Vendor's Affidavit is inadmissible to vary or add to the terms of the deed, which provides that the property was being conveyed "subject to all easements, restrictions, and limitations of record[.]" Appellant's App. p. 207.  The doctrine of merger by deed generally provides that all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged into the deed at closing.  Williams v. Younginer, 851 N.E.2d 351, 356 (Ind. Ct. App. 2006).  However, the doctrine of merger by deed only applies in the absence of fraud or mistake.  Id.; Equitable Trust Co. of New London v.

---

[5] Because the trial court's findings only mention the utility easement set forth in the 1993 Agreement, KSM argues that the trial court's conclusion was based solely on the existence of the utility easement and not the restrictive covenants prohibiting construction on the Lighthouse Parcel.  However, KSM designated evidence indicating that the utility easement, standing alone, did not prevent Lighthouse from developing the Lighthouse Parcel as planned. Appellant's App. p. 529.  Because the trial court concluded that Lighthouse would not have completed the purchase had it known of the existence of the "restrictions," it appears that the trial court's conclusion was premised on the entirety of the 1993 Agreement, including the restrictive covenants set forth therein.  In any event, the specific basis for the trial court's ruling does not constrain our analysis on appeal because we are not bound by the trial court's specific findings and may affirm a summary judgment ruling on any basis supported by the record.  See Illiana Surgery & Med. Ctr. V. STG Funding, Inc., 824 N.E.2d 388, 398 n.6 (Ind. Ct. App. 2005).

9

Milligan, 31 Ind. App. 20, 20, 65 N.E. 1044, 1046 (1903) (holding that the doctrine of merger "in no way applies" to fraud and mistake). Additionally, extrinsic or parol evidence is always admissible to show fraud (whether intentional or unintentional), mistake, or any other basis for rescission of contract. Clark v. CSX Transp., Inc., 737 N.E.2d 752, 758 (Ind. Ct. App. 2000), trans. denied; Milligan, 31 Ind. App. at 20, 65 N.E. at 1046; Franklin, 493 N.E.2d at 165. Accordingly, Lighthouse is entitled to rely on the Vendor's Affidavit and on other, extrinsic or parol evidence to establish constructive or unintentional fraud.[6]

Next, KSM argues that under the terms of the deed and the purchase agreement, Lighthouse has forfeited any right to rescind the purchase based on any defects in title or undisclosed encumbrances. With respect to the deed, KSM relies on the language providing that the conveyance was "subject to all easements, restrictions, and limitations of record[.]" Appellant's App. p. 207. In support of its argument that this language allocated the risk that there might be any undiscovered encumbrances to Lighthouse, KSM cites various authorities supporting the general proposition that, when a deed provides that a conveyance is made subject to encumbrances of record, the grantee may not seek to rescind the deed based on breach of the warranty of title.

---

[6] KSM also argues that by accepting a deed containing the "subject to" language, Lighthouse took the deed with constructive notice of all recorded encumbrances, including the 1993 Agreement. But this does not absolve KSM of responsibility for its affirmative misrepresentations concerning the existence or nonexistence of recorded encumbrances. Indeed, it is "the law in Indiana that a false and fraudulent representation may be relied upon by a person having no actual knowledge, even though the fact in question is a matter of public record." Carrell v. Ellingwood, 423 N.E.2d 630, 635 (Ind. Ct. App. 1981). It is undisputed that Lighthouse had no actual notice of the restrictive covenants set forth in the 1993 Agreement.

10

But even KSM acknowledges that Lighthouse has not claimed that KSM has breached any warranty of title set forth in the deed. Rather, Lighthouse contends that KSM fraudulently induced it to accept the deed, which disclaimed any warranties of title, by affirmatively misrepresenting the quality of title to the Lighthouse Parcel in the Vendor's Affidavit—although the misrepresentation may have been unintentional. As we noted above, our supreme court has held that a purchaser who has detrimentally relied on a seller's unintentional misrepresentation as to a material fact may rescind a real estate purchase contract. Franklin, 493 N.E.2d at 164. Although the deed's "subject to" language may have been sufficient to disclaim any warranties of title, it will not shield KSM from liability for making affirmative misrepresentations in order to induce Lighthouse to accept the deed, even if those misrepresentations were made unintentionally. See Milligan, 31 Ind. App. at 20, 65 N.E. at 1046 ("He who sells property upon description given by himself is bound to make good that description; and, if it be untrue in any material point, although the variance be occasioned by a mistake, he himself still remains liable for that variance." (internal quotations omitted)); see also Fimbel v. DeClark, 695 N.E.2d 125, 129 (Ind. Ct. App. 1998) (holding that an "as is" clause in a deed provides no insulation from fraudulent misrepresentations), trans. denied.

KSM also argues that Lighthouse is not entitled to rescission because, with respect to assurances of the quality of title to the Lighthouse Parcel, Lighthouse received all that it bargained for under the purchase agreement: "a limited warranty deed and a title insurance policy that would insure Lighthouse's title." Appellant's Br. at 20. However,

11

under the purchase agreement, Lighthouse was required not only to deliver a limited warranty deed and insurance policy, but also a "vendor's affidavit in [a] form acceptable to Purchaser[.]" Appellant's App. p. 442. And in the Vendor's Affidavit, KSM warranted that the title commitment fully disclosed the complete condition of the real estate. Thus, by bargaining to receive the Vendor's Affidavit, Lighthouse bargained to receive additional assurances from KSM regarding the quality of title—specifically, assurances that the title search conducted by Lawyers Title had not missed any encumbrances or clouds on Lighthouse's title. Accordingly, the Vendor's Affidavit, which contained warranties and assurances separate and apart from those mentioned in the purchase agreement, was bargained for and procured in order to protect Lighthouse in precisely the circumstances presented in this case.[7]

As we noted above, our supreme court has held that, even in the absence of intent to deceive on the seller's part, a purchaser of real property may seek rescission where he has detrimentally relied upon the seller's misrepresentations as to a material fact.[8] Franklin, 493 N.E.2d at 164; see also Koehlinger, 933 N.E.2d at 540. On appeal, KSM asserts that (1) the Vendor's Affidavit, when read in its entirety and in conjunction with

---

[7] For these same reasons, we are unpersuaded by KSM's argument that Lighthouse waived any right to challenge the quality of title to the Lighthouse Parcel by failing to object on the basis of the restrictive covenants during the examination period set forth in the purchase agreement and an amendment thereto. To the extent that Lighthouse agreed to proceed to purchase the Lighthouse Parcel if it did not discover any title defects during the examination period, it did so with the understanding that KSM would deliver a Vendor's Affidavit containing additional assurances of title at closing.

[8] Consequently, KSM's argument that the designated evidence does not establish as a matter of law that KSM intentionally misled Lighthouse is unavailing. Likewise, KSM's reliance on Dean v. Kruse Foundation, 932 N.E.2d 763 (Ind. Ct. App. 2010), trans. denied, is misplaced. In Dean, the seller made no misrepresentations of material fact, and the purchaser had actual notice of the disputed right-of-way when he purchased the property. Id. at 768.

the deed, contains no misrepresentation of fact, and (2) that even if the Vendor's Affidavit can be read to contain a misrepresentation as to the quality of title to the Lighthouse Parcel, the misrepresentation was not sufficiently material to justify rescission.

With regard to the first of these arguments, we note that in the Vendor's Affidavit, KSM represented that the title commitment issued by Lawyers Title "fully disclose[d], as of the date thereof, the complete and true condition of title to the Real Estate." Appellant's App. p. 127. It is undisputed that the 1993 Agreement was not listed in the title commitment; accordingly, the Vendor's Affidavit contained a misstatement of fact, although the misstatement may have been unintentional.

Nevertheless, KSM contends that the Vendor's Affidavit, when read in its entirety and in conjunction with the deed, does not contain any misrepresentations of material fact. Specifically, KSM directs our attention to additional language in the Vendor's Affidavit providing that "the Real Estate is free and clear of all taxes, liens, encumbrances, easements, assessments, charges or leases of whatsoever kind or nature, except those shows in the Title Commitment, *and matters affecting the Real Estate disclosed in the Deed*." Id. (emphasis added). Relying on this emphasized language in conjunction with the language of the deed providing that the conveyance was made subject to all easements, restrictions, and limitations of record, KSM argues that the Vendor's Affidavit did not actually contain a misstatement of fact because the 1993 Agreement was a restriction of record.

13

But the Vendor's Affidavit indicated that the real estate was free and clear of all encumbrances except for those listed in the title commitment and matters *disclosed* in the deed. Although the deed made reference to restrictions of record, it did not actually *disclose* the existence of any such restrictions—put simply, the deed disclosed nothing with regard to the 1993 Agreement or any other encumbrance. Accordingly, the boilerplate "subject to" language of the deed does not render KSM's statement regarding the accuracy and completeness of the title commitment true.

Next, KSM argues that the restrictive covenants in the 1993 Agreement are ambiguous and should not be interpreted to prevent construction on the Lighthouse Parcel, and that any misrepresentation concerning the existence or nonexistence of the covenants is therefore not sufficiently material to support rescission of the purchase contract.

> A restrictive covenant is an agreement between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner. One purpose of restrictive covenants is to maintain or enhance the value of land by controlling the nature and use of lands subject to a covenant's provisions. Because covenants are a form of express contract, we apply the same rules of construction. Construction of the terms of a written contract is a pure question of law for the court and we conduct a *de novo* review of the trial court's conclusions in that regard.

Johnson v. Dawson, 856 N.E.2d 769, 772 (Ind. Ct. App. 2006) (citations and quotations omitted).

Although Indiana law permits restrictive covenants, they are disfavored and justified only to the extent that they are unambiguous and enforcement is not against public policy. Id. Restrictive covenants will be strictly construed, and any doubts

14

regarding their interpretation should be resolved in favor of the free use of property and against restrictions. Id. at 773. The intent of the covenanting parties must be determined from the specific language used in the contract and from the situation of the parties when the covenant was made. Id. Only where the intent of the parties cannot be determined within the four corners of the document do we examine extrinsic facts. King v. Ebrens, 804 N.E.2d 821, 826 (Ind. Ct. App. 2004) (citing Campbell v. Spade, 617 N.E.2d 580, 584 (Ind. Ct. App. 1993)).

We see no ambiguity in the 1993 Agreement. The 1993 Agreement first identifies the real estate subject to the Agreement as "Tract 1" and "Tract 2." Exhibits attached to and incorporated in the 1993 Agreement identify Tract 1 as the land within the Shopping Center retained by KSM after the sale of the Builder's Square Parcel, including the Lighthouse Parcel. Tract 2 is identified as the Builder's Square Parcel. The 1993 Agreement goes on to provide that:

> As used herein the term "Building Areas" shall mean the portions of Tract 1 and Tract 2 defined and marked as the Building Areas on Exhibit C attached hereto. [KSM] and Laurel and their respective successors and assigns hereby agree that all structures constructed or to be constructed on the Tracts shall be located within the Building Areas.[9]

---

[9] Another provision of the 1993 Agreement similarly provides as follows:
> [KSM] and Laurel acknowledge and agree that it is their mutual intent that all . . . unimproved areas of Tract 1 and Tract 2 shall remain open and unobstructed. [KSM] and Laurel hereby agree that no fences, walls, barriers or other obstructions or impediments shall be constructed or maintained on . . . the unimproved areas of Tract 1 and Tract 2 which shall prevent or impair the visibility over and across such areas, or the use or exercise of the easement granted herein, or the free access and movement, including, without limitation, pedestrian and vehicular traffic, between Tract 1 and Tract 2.

Appellant's App. p. 370.

Appellant's App. p. 369. The Building Area identified in Exhibit C to the 1993 Agreement includes only the Builder's Square and Gander Mountain Parcels. Because the Lighthouse Parcel is not located within the Building Areas identified in Exhibit C, the 1993 Agreement clearly and unambiguously prohibited construction on the Lighthouse Parcel.

Nevertheless, KSM insists that it was never the intention of KSM or Laurel that the restrictive covenants contained in the 1993 Agreement would prevent construction on the Lighthouse Parcel. KSM asserts that the restrictions were only intended to ensure that the view of the Builder's Square store from Lima Road remained unobstructed and that the Lighthouse Parcel, which is located behind the Builder's Square Store, was inadvertently omitted from the Building Areas identified in the 1993 Agreement due to a drafting error by the surveyor.[10] However, KSM relies solely on extrinsic evidence to support this argument. Under the "four corners rule," extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction. Keck v. Walker, 922 N.E.2d 94, 101-02 (Ind. Ct. App. 2010); see also King, 804 N.E.2d at 826. We have already concluded that the 1993 Agreement is clear and unambiguous. Accordingly, we will not look beyond the four corners of the document to determine the parties' intent.[11]

---

[10] KSM does not appeal the trial court's denial of summary judgment on its request for reformation of the 1993 Agreement.

[11] KSM also briefly argues that the trial court erred in denying its motion to supplement its designated evidence with evidence purportedly establishing that Lighthouse had actual knowledge of the existence of the utility easement prior to closing. But KSM fails to cite any authority or develop a cogent argument in support of this claim, and it is therefore waived. See Romine v. Gagle, 782 N.E.2d 369, 386 (Ind. Ct. App. 2003) (providing that a party waives

In light of our conclusion that the 1993 Agreement prohibited construction of any kind on the Lighthouse Parcel, the materiality of KSM's misrepresentation concerning the accuracy and completeness of the title commitment cannot be reasonably disputed. See Watson v. Golden Rule Ins. Co., 564 N.E.2d 302, 306 (Ind. Ct. App. 1990) ("Normally, the materiality of a misrepresentation is a question of fact for the jury, but it may be determined as a matter of law if the evidence is such that there can be no reasonable difference of opinion."). Indeed, Lighthouse paid KSM $456,000 to purchase the Lighthouse Parcel in order to develop it as a self-service storage facility and unrelated office building, but because of the undisclosed restrictive covenants, the property was worthless for that purpose at the time of closing.

We have concluded that the Vendor's Affidavit contained a misrepresentation of material fact, namely that the title commitment disclosed the complete and accurate condition of title to the Lighthouse Parcel. KSM makes no argument on appeal that Lighthouse did not rely on the Vendor's Affidavit to its detriment. Indeed, the Vendor's Affidavit specifically provides that it was made "with the knowledge and understanding that it is being delivered to induce [Lighthouse] . . . to rely upon the foregoing warranties and representations, and will be relied upon by them in completing the purchase of the Real Estate." Appellant's App. p. 507.

---

any issue for which it fails to develop a cogent argument or support with adequate citation to authority and the record), trans. denied. Waiver notwithstanding, if we were to consider KSM's supplemental evidence, it would not alter the outcome of this appeal. Even if Lighthouse had knowledge of the utility easement, KSM makes no argument that Lighthouse had actual knowledge of the restrictive covenants preventing construction on the Lighthouse Parcel, which were clearly far more material to the transaction.

We reiterate that a trial court's grant of summary judgment comes before this court clothed with a presumption of validity, and the appellant bears the burden of convincing us that the trial court's ruling was improper. Bamberger & Feibleman v. Indianapolis Power & Light Co., 665 N.E.2d 933, 936 (Ind. Ct. App. 1996). As this court has noted, "[w]e will not become an advocate for a party, and we will not address arguments that are either inappropriate, too poorly developed, or improperly expressed to be understood." Lasater v. Lasater, 809 N.E.2d 380, 389 (Ind. Ct. App. 2004). Accordingly, we will not step into the shoes of KSM's appellate counsel to develop arguments on KSM's behalf. Because KSM failed to develop any argument as to whether Lighthouse detrimentally relied on KSM's statement in the Vendor's Affidavit, we cannot conclude that KSM has met its burden of establishing that the trial court improperly granted summary judgment in Lighthouse's favor.

Finally, KSM argues that even if Lighthouse is entitled to summary judgment, it is not entitled to rescission. First, KSM argues that it was entitled to cure Lighthouse's title objections, and it did so by obtaining consent documents from the owners of the Builder's Square and Gander Mountain Parcels that would allow Lighthouse to develop the Lighthouse Parcel as planned, notwithstanding the 1993 Agreement. In a related argument, KSM argues that because Lighthouse's title objection has been cured, Lighthouse is precluded from seeking rescission of the contract because it has an adequate remedy at law, i.e. money damages. We disagree.

Constructive or unintentional fraud is a basis for rescission of a contract. Franklin, 493 N.E.2d at 164. A party bringing an action for fraud may choose one of two remedies: he may affirm the contract, retain its benefits, and seek damages, or he may rescind the contract, return any benefits received, and be returned to the status quo. Ind. & Mich. Elec. Co. v. Harlan, 504 N.E.2d 301, 307 (Ind. Ct. App. 1987), trans. denied. A party seeking to rescind a contract bears the burden of proving his right to rescission, and that he is able to return any property received under the contract, or its reasonable value if the return of the property is impossible. Hart v. Steel Products, Inc., 666 N.E.2d 1270, 1275 (Ind. Ct. App. 1996), trans. denied. Requests for rescission are addressed to the trial court's sound discretion, and a party appealing from the trial court's grant of rescission bears the burden of showing that the decision was erroneous. Id.

On appeal, KSM makes no argument that parties cannot be returned to the status quo ante. And the authorities relied upon by KSM for the proposition that it could defeat Lighthouse's right to rescind by making good on its misrepresentations after Lighthouse demanded rescission are either inapplicable to the case at hand or do not support the proposition urged by KSM. First, KSM cites provisions of Indiana's Uniform Commercial Code; but the Uniform Commercial Code applies to the sale of goods, not real estate. See Ind. Code § 26-1-2-102 (2002). KSM also relies on a number of out-of-state cases for the proposition that "[i]t is sufficient if the seller makes good its title, even after a lawsuit is brought seeking rescission of the contract." Appellant's Br. at 26. But none of these cases stand for the proposition that a seller who has induced a purchaser to

19

accept a deed by making material misrepresentations as to the quality of title is entitled to cure the defect and thereby defeat the defrauded purchaser's right of rescission. See, e.g., Carter Coal Co. v. Litz, 54 F. Supp. 115, 133 (W.D. Va. 1943) (holding that where a party seeks rescission of a real estate purchase contract on the grounds of a defective title, "the vendor may complete the title pending the suit and at any time before hearing; *at least in the absence of fraud on the part of the vendor*[.]" (emphasis added)), aff'd, 140 F.2d 934 (4th Cir. 1944); Nixon v. Albert, 167 So. 558, 560 (Ala. 1936) (holding that a purchaser of real estate is not entitled to rescission on basis of a defect in title where the seller cures the defect prior to a hearing on the buyer's action to rescind the purchase, "*if no fraud was practiced by the vendor*[.]" (emphasis added)).

For all of the foregoing reasons, we cannot conclude that KSM has met its burden of establishing that the trial court erred in granting summary judgment in Lighthouse's favor, or that it abused its discretion in granting rescission of the purchase contract as a remedy.

## II. KSM's Negligence Claim against Lawyers Title

Next, KSM argues that the trial court erred in granting summary judgment in favor of Lawyers Title on KSM's claim for negligent misrepresentation. As an initial matter, we note that it is undisputed that there is no contractual privity between Lawyers Title and KSM with respect to the title commitment.[12] Although it is undisputed that KSM

---

[12] Lawyers Title argues that it owed no contractual duty to KSM, but briefly states, without citation to the record, that "KSM asserts that a contract governed the relationship between the parties[.]" Lawyers Title's Appellee's Br. at 19. Contrary to Lawyers Title's assertion, KSM's argument on appeal is grounded in tort, not contract. And even if

initially contacted Lawyers Title, it did so for the purpose of obtaining a title commitment and policy for Lighthouse. The title commitment issued by Lawyers Title specifically provides that Lawyers Title's liability under that document "shall be only to the named proposed Insured[.]" Appellant's App. p. 498. Because KSM was not listed as a proposed insured in the title commitment, KSM cannot recover on a theory of contract. This point is crucial to our resolution of the issue before us because if the title commitment were a contract between KSM and Lawyers Title, "the parties in all likelihood would be relegated to their contractual remedies." U.S. Bank, N.A. v. Integrity Land Title Corp., 929 N.E.2d 742, 746 (Ind. 2010).

In light of the absence of contractual privity, we turn now to KSM's tort claim for negligent misrepresentation. Our supreme court has recently noted that "[i]n the context of the title insurance industry, Indiana courts have shown a willingness to go beyond the terms of the insurance contract to explore whether a duty might lie in tort as well as contract." Id. at 748. In acknowledging that the tort of negligent misrepresentation is actionable in Indiana, the court relied on Restatement (Second) of Torts section 552(1), which provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

KSM asserted that Lawyers Title was liable under a theory of contract, for the reasons discussed above, we would conclude that the title commitment did not create a contractual duty to KSM.

21

Integrity, 929 N.E.2d at 747. The court also acknowledged that "[a] professional may owe a duty to a third party with whom the professional has no contractual relationship, but the professional must have actual knowledge that such third person will rely on his professional opinion." Id. (citing Thomas v. Lewis Eng'g, Inc., 848 N.E.2d 758, 760 (Ind. Ct. App. 2006)).

Here, the trial court granted summary judgment in favor of Lawyers Title on KSM's claim for negligent misrepresentation, concluding that "there is no negligence **in tort** as [KSM] could not reasonably rely upon the title search and commitment performed and issued by Lawyers Title to disclose a document of which it had actual or constructive knowledge by contracting for, executing and recording it." Appellant's App. p. 18. On appeal, KSM denies that it had any knowledge that the restrictive covenants set forth the in 1993 Agreement were applicable to the Lighthouse Parcel. KSM argues further that Lawyers Title was not entitled to summary judgment because Lawyers Title knew that KSM would rely on the title commitment in executing the vendor's affidavit, and that such reliance was justifiable. Lawyers Title responds that it should not be liable in tort for its failure to discover and disclose the existence of the 1993 Agreement because, in conducting the title search and issuing the title commitment, Lawyers Title was acting as a title insurer as opposed to a title abstractor. Specifically, Lawyers Title argues that unlike title abstractors, who issue title abstracts for the purpose discovering the quality of title to real estate, title insurers issue title commitments only to determine the insurability of title to the real estate.

Lawyers Title cites various cases from other states in support of this assertion, but our supreme court has already resolved the issue against Lawyers Title. In Integrity, the principal case on which KSM relies, a buyer of real property secured a mortgage loan from Texcorp, and Integrity prepared a title commitment and conducted the closing at Texcorp's request. Integrity, 929 N.E.2d at 744. Integrity's title commitment failed to reveal an existing foreclosure judgment on the property. Id. Thereafter, Southern National Title Insurance Company issued and underwrote a mortgage insurance policy naming Texcorp and its successors and/or assigns as the insured. Id. The foreclosure judgment holder later filed an action against the owner of the property and Texcorp. Id. U.S. Bank succeeded Texcorp's interests, intervened in the action, and filed a third-party claim against Integrity and Southern for breach of contract and negligence. Id. The trial court granted summary judgment in Integrity's favor, concluding that Integrity was not in breach of contract because it was not a party to the title insurance policy issued by Southern, and that it was not negligent because it owed no duty to U.S. Bank in tort. Id. at 745.

On appeal, our supreme court adopted Integrity's position that it was not in contractual privity with U.S. Bank before going on to address U.S. Bank's claim for negligent misrepresentation. Id. at 745. The court framed the issue as follows: "whether the issuance of a title commitment and subsequently issued title insurance policy give rise in Indiana to a tort cause of action for negligent misrepresentation against a title insurer or commitment issuer, separate and apart from the contractual obligations of the title

23

policy." Id. at 746. The court answered this question affirmatively, thereby recognizing that a title insurer may be liable for negligence in issuing a title commitment that fails to disclose an encumbrance. Id. at 748-49; see also Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C., 929 N.E.2d 722, 741 (Ind. 2010).

Lawyers Title argues that Integrity is distinguishable because KSM was the seller of the property rather than a mortgagee as in Integrity. However, our supreme court did not limit the negligent misrepresentation claim in Integrity to a mortgagee. Rather, the court required only that the plaintiff have justifiably relied upon the information provided, and that the professional have actual knowledge that the third person would rely on the information.[13] Integrity, 929 N.E.2d at 747-49. Whether Lawyers Title had actual knowledge that KSM would rely on its title commitment in executing the Vendor's Affidavit and whether KSM's alleged reliance was justifiable are questions of fact for resolution at trial.

---

[13] Citing Essex v. Ryan, 446 N.E.2d 368, 373 (Ind. Ct. App. 1983), Lawyers Title contends that this court has "cautioned that holdings in cases of negligent misrepresentation should be strictly confined to the facts presented." Lawyers Title's Appellee's Br. at 9. The Essex court said no such thing. At the time Essex was decided, the common law rule that a tortfeasor's duty is limited to only those parties in privity with him was still in effect. 446 N.E.2d at 371. The Essex court carved out a limited exception to the privity requirement for surveyors rendering professional services; specifically, the court held that a surveyor has a duty in tort to plaintiffs with whom he lacks privity where the surveyor has actual knowledge that the plaintiffs will rely on the information he supplies. Id. at 372-74. The court cautioned that the holding in that case was "strictly confined" to the facts of that case, noting that the court had employed "a methodology of abolishing the privity barrier on a step-by-step basis, depending upon the facts of a given case." Id. at 373 n.1. Thus, the Essex court simply reasoned that cases abrogating the common-law privity rule should be construed narrowly. But as our supreme court noted in Webb v. Jarvis, the privity requirement in negligence claims "vanished evolutionarily during the twentieth century." 575 N.E.2d 992, 995 (Ind. 1991). It is now well established that privity is not always required. Id. Accordingly, the concerns the Essex court expressed regarding the preservation of the privity rule are no longer relevant. See Integrity, 929 N.E.2d at 747 ("A professional may owe a duty to a third party with whom the professional has no contractual relationship, but the professional must have actual knowledge that such third person will rely on his professional opinion.").

However, Lawyers Title argues that that KSM could not have reasonably relied on the title commitment in executing the Vendor's Affidavit because the purpose of the Vendor's Affidavit was to induce reliance on the part of Lawyers Title. In support of this argument, Lawyers Title directs our attention to the following language in the Vendor's Affidavit: "This Vendor Affidavit is made with the knowledge and understanding that it is being delivered to induce Grantee, title companies, lenders, and closing agents to rely upon the forgoing warranties and representations, and will be relied upon them in completing the purchase of the Real Estate." Appellant's App. p. 128. Relying on this language, Lawyers Title argues that "[i]t is unreasonable for KSM to argue that the vendor affidavit was made in reliance on the title commitment when the vendor affidavit exists to induce reliance by the title company instead." Lawyers Title's Appellee's Br. at 12.

Lawyers Title's argument conflates the two distinct roles a title company plays when it issues both a title commitment and a policy of title insurance.

> Where a title insurer presents a buyer with both a preliminary title report and a policy of title insurance two distinct responsibilities are assumed; in rendering the first service, the insurer serves as an abstractor of title and must list all matters of public record regarding the subject property in its preliminary report. When a title insurer breaches its duty to abstract title accurately it may be liable in tort for all the damages proximately caused by such breach.

Ford v. Guarantee Abstract & Title Co., 553 P.2d 254, 258 (Kan. 1976) (quoted in Integrity, 929 N.E.2d at 747). Here, it is clear that Lawyers Title issued its title commitment *before* KSM executed the vendor's affidavit, and one purpose of the

25

Vendor's Affidavit was for KSM to verify that the title commitment accurately reflected the condition of title to the Lighthouse Parcel. Thus, Lawyers Title could not have relied on the Vendor's Affidavit in fulfilling its role as an abstractor, i.e. issuing the title commitment. While Lawyers Title may have relied on the Vendor's Affidavit in fulfilling its role as an *insurer* by issuing a policy of title insurance to Lighthouse, this does not foreclose the possibility that KSM relied on the title commitment, which Lawyers Title issued in fulfillment of its role as a title *abstractor*, in executing the Vendor's Affidavit.

Next, Lawyers Title argues that KSM could not reasonably rely on Lawyers Title to discover the existence of the restrictive covenants in the 1993 Agreement because KSM had actual notice of those restrictions. While we agree that KSM's reliance would not be justifiable if it had actual knowledge that the restrictive covenants applied to the Lighthouse Parcel, KSM has denied having any such knowledge throughout the course of the proceedings in this case. Rather, KSM insists that the parties never intended the restrictive covenants in the 1993 Agreement to prohibit development of the Lighthouse Parcel and that, unbeknownst to KSM, the Lighthouse Parcel was omitted from the Building Areas identified in the 1993 Agreement as a result of a drafting error on the part of the surveyor. Construing the designated evidence in the light most favorable to KSM, as we must, we conclude that there is a genuine issue of material fact as to whether KSM had actual knowledge that the Lighthouse Parcel was not included within the Building Areas identified in the 1993 Agreement.

We also note that the trial court concluded that KSM could not justifiably rely on the title commitment because it had "constructive knowledge" of the restrictive covenants set forth in the 1993 Agreement as a result of having contracted for, executed, and recorded that document. Constructive knowledge is a legal fiction under which knowledge is attributed to a party who would have obtained actual knowledge through the exercise of reasonable care and diligence. See Black's Law Dictionary 950 (9th ed. 2009). In other words, knowledge of some fact or event is sometimes imputed to a party who was negligent in failing to obtain such knowledge. Thus, the trial court's conclusion that KSM had constructive knowledge of the 1993 Agreement was essentially a conclusion that, even if KSM did not have actual knowledge of the 1993 Agreement, its lack of knowledge was negligent.

As a general matter, the ultimate question of whether a party has acted negligently is not appropriately resolved on summary judgment. See Oxley v. Lenn, 819 N.E.2d 851, 856-57 (Ind. 2004) (reasoning that the negligence determination is governed by an objective, reasonable person standard best applied by a jury after hearing all the evidence). And even if KSM was negligent as a matter of law, under principles of comparative fault, negligence on the part of the plaintiff does not necessarily preclude recovery by the plaintiff—and the allocation of fault is entrusted to the sound judgment of the fact-finder. See Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1056 (Ind. 2003).

27

Where the evidence gives rise to conflicting inferences, the question of whether a party's reliance was justifiable is one for the trier of fact. Biberstine v. New York Blower Co., 625 N.E.2d 1308, 1316 (Ind. Ct. App. 1993). KSM designated evidence indicating that the parties to the 1993 Agreement never intended the restrictive covenants set forth in that document to prohibit construction on the Lighthouse Parcel, and that it was unaware that the Lighthouse Parcel had been omitted from the Building Areas identified in the 1993 Agreement as a result of a drafting error on the part of the surveyor. KSM has also designated evidence indicating that it has used Lawyers Title's services in numerous real estate transactions, and that it never hires a separate title abstractor to verify the accuracy of title commitment prepared by Lawyers Title. KSM's designated evidence also indicates that "the custom in the real estate industry in Fort Wayne is for the seller to rely on the title commitment when providing the vendor's affidavit." Appellant's App. p. 522. In light of KSM's designated evidence, we must conclude that a genuine issue of material facts exists as to whether KSM justifiably relied on the title commitment prepared by Lawyers Title in consummating the real estate transaction at issue here.[14] We therefore conclude that the trial court erred in granting summary judgment for Lawyers Title on KSM's negligent misrepresentation claim.

---

[14] Lawyers Title also argues, albeit briefly, that that its failure to discover the existence of the 1993 Agreement through its title search is not the proximate cause of KSM's injuries. However, Lawyers Title has failed to cite any authority in support of this argument, and it is therefore waived. See Strong v. Jackson, 777 N.E.2d 1141,1153 n.6 (Ind. Ct. App. 2002), aff'd on reh'g, 781 N.E.2d 770 (Ind. Ct. App. 2003); Ind. Dep't of Revenue v. Am. Underwriters, Inc., 429 N.E.2d 306, 312 (Ind. Ct. App. 1981).

### III. Lighthouse's Fraud Claim Against Sturges

On cross-appeal, Lighthouse argues that the trial court erred in granting summary judgment in favor of Sturges on Lighthouse's actual fraud claim.[15] As an initial matter, KSM and Sturges argue that there is no basis to hold Sturges personally liable because he was acting in his capacity as a manager of KSM at the time the alleged misrepresentations with respect to the sale of the Lighthouse Parcel were made. Specifically, KSM and Sturges suggest that Sturges cannot be held personally liable unless KSM disregarded the corporate structure and served as a mere instrumentality for Sturges's own business—in short, KSM and Sturges argue that in order to survive summary judgment, Lighthouse was required to designate evidence sufficient to justify piercing the corporate veil. See Comm'r, Ind. Dep't of Envtl. Mgmt. v. RLG, Inc., 755 N.E.2d 556, 563 (Ind. 2001) (noting that an officer or employee of a corporation may be held individually liable for acts committed in that capacity under the doctrine of "piercing the corporate veil").

We cannot agree that Sturges's potential liability depends on piercing the corporate veil. As a general matter, a corporate officer or employee is not individually liable for the acts of the corporation. Id. at 559. The doctrine of piercing the corporate veil is only one exception to this rule. Id. at 563. Another exception exists for officers and employees who individually participate in the tortious acts of the corporation. Id. at 560 (citing Civil Rights Comm'n v. Cnty. Line Park, Inc., 738 N.E.2d 1044, 1050 (Ind.

---

[15] With regard to Sturges's potential personal liability, Lighthouse relies solely on a theory of actual fraud and advances no claim of constructive fraud or innocent misrepresentation.

2000) (noting that "[a corporate] officer is personally liable for the torts in which she has participated or which she has authorized or directed.")). Thus, Sturges could be held liable if he personally participated in the alleged fraud, without any need to pierce the corporate veil.

Here, the designated evidence establishes that Sturges had been involved with the development of the Shopping Center through his employment with KSM and its predecessor since 1989. Sturges signed the 1993 Agreement in his capacity as a partner of KSM's predecessor.[16] Then, in 2008, Sturges signed the Vendor's Affidavit which expressly provided that the title commitment issued by Lawyers Title "fully disclose[d], as of the date thereof, the complete and true condition of title to the Real Estate." Appellant's App. p. 506. These facts give rise to a reasonable inference that Sturges, although acting in a corporate capacity, may have personally participated in the alleged fraud. Sturges is therefore not entitled to summary judgment on the basis that he cannot be held personally liable for actions undertaken in his capacity as a corporate officer or employee of KSM.

The trial court, however, did not grant summary judgment in Sturges's favor based on a conclusion that he could not be held personally liable. Rather, the court concluded that "there is no genuine as to any material fact and nothing contained in the designated evidence to objectively substantiate any fraud or intentional conduct on the part of Sturges." Appellant's App. p. 658. Lighthouse disagrees with this conclusion and asserts

---

[16] To be more precise, Sturges is listed in the 1993 Agreement as a partner in Sturges, Griffin & Trent Realty Co., which is in turn listed as a partner in KSKM, a general partnership and KSM's predecessor.

that the designated evidence was sufficient to create an issue of material fact concerning whether Sturges committed actual fraud.

To avoid summary judgment on its actual fraud claim, Lighthouse was required to designate evidence supporting an inference that Sturges made a material misrepresentation of past or existing fact with knowledge or reckless ignorance of its falsity, and that the misrepresentation induced detrimental reliance by Lighthouse. See Tracy v. Morrell, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011). We have already concluded that the Vendor's Affidavit, which was executed by Sturges in his capacity as a representative of KSM, contained a material misrepresentation of fact, namely that the title commitment issued by Lawyers Title fully disclosed the complete and true condition of title to the real estate, and KSM does not appear to dispute Lighthouse's claim that it detrimentally relied on the statement made in the Vendor's Affidavit. Thus, the issue on appeal is whether the misrepresentation was made with knowledge or reckless ignorance of its falsity.

"An intent to deceive, or 'scienter,' is an element of actual fraud, whether classified as a knowing or reckless misrepresentation or as an additional element to a knowing or reckless misrepresentation." Wright v. Pennamped, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995), clarified on reh'g, 664 N.E.2d 394 (Ind. Ct. App. 1996). Direct or positive proof is not essential to establish scienter; circumstantial evidence will suffice if there are grounds from which fraud may be reasonably inferred. Id.; Tracy, 948 N.E.2d at 863.

31

The 1993 Agreement clearly and unambiguously prohibited development of the Lighthouse Parcel. Because Sturges signed the 1993 Agreement on KSM's behalf, it is reasonable to infer that he was aware of and understood the contents and effect of that document. And although the 1993 Agreement was somehow omitted from the title commitment prepared by Lawyers Title, Sturges signed a Vendor's Affidavit stating that the title commitment fully disclosed the complete and true condition of title to the Lighthouse Parcel. Sturges claims that this misrepresentation was not made knowingly or recklessly because he did not believe that the 1993 Agreement prohibited development of the Lighthouse Parcel, but this is simply a request to view the evidence and inferences in a light unfavorable to Lighthouse as the nonmoving party. When the evidence is construed in the light most favorable to Lighthouse, Sturges's personal involvement in the execution of both the 1993 Agreement and the Vendor's Affidavit is circumstantial evidence sufficient to give rise to a reasonable inference that the misrepresentation in the vendor's affidavit was made knowingly or recklessly. Accordingly, the designated evidence establishes a genuine issue of material fact with respect to Lighthouse's fraud claim against Sturges. We therefore conclude that the trial court erred in granting summary judgment in favor of Sturges on Lighthouse's fraud claim.

## Conclusion

KSM has not satisfied its burden of establishing that the trial court improperly granted summary judgment in Lighthouse's favor and or that it abused its discretion in ordering rescission of the purchase contract. However, the trial court erred in granting

summary judgment in favor of Lawyers Title on KSM's negligent misrepresentation claim and by granting summary judgment in Sturges's favor on Lighthouse's actual fraud claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

RILEY, J., and BAILEY, J., concur.